ELIZABETH MOORE *vs.* DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY & another.[1] December 6, 1983. *Employment Security*, Eligibility for benefits.

This appeal challenges the decision of the board of review (board) of the Division of Employment Security, denying unemployment benefits to the plaintiff. The decision was affirmed by a judge of the Plymouth District Court. Pursuant to G.L. c. 151A, § 42, this case came here for direct review with a report from that court. We affirm.

We summarize the review examiner's findings of fact.[2] Moore worked for the Boston Zoological Society from January, 1975, to October 21, 1981, as a switchboard operator and receptionist. Moore's hours of work were 8:30 A.M. to 4:30 P.M. In early August, 1981, Moore moved to Plymouth. In early September, Moore began riding to work with her daughter-in-law. By riding with her daughter-in-law Moore arrived at work between 9 and 9:30 A.M. Moore's supervisor told her to be at the switchboard by 8:30 A.M. On October 16, 1981, Moore learned that she was eligible for fuel assistance, and that the application had to be made at Plymouth on October 19, 1981, between 9:30 A.M. and 12:30 P.M. Moore told the bookkeeper that she was taking October 19 off for personal business. On October 19, Moore telephoned her supervisor at 7:30 A.M. and left the same message. Moore did not complete the application for

---

[1] Boston Zoological Society.

[2] The board adopted the findings of the review examiner, and we therefore treat them as the findings of the board.

fuel assistance on October 19. She called her employer and left a message
that she would not be in on October 20 because of personal business.

On October 21, 1981, Moore reported for work at 9:30 A.M. At ap-
proximately 12:30 P.M., Moore asked to speak to her supervisor about her
absences and tardiness. Moore knew the supervisor was upset. At the
meeting Moore told her supervisor if the supervisor did not like what she
was saying, the supervisor could fire her. The supervisor fired Moore.
Moore went back to the switchboard. At 3 P.M., Moore apologized to her
supervisor for losing her temper. The supervisor instructed her to report
to work the next day. The next day Moore reported to work at 9:30 A.M.
Moore's employment was terminated.

The review examiner found that Moore was discharged because she
reported to work at 9:30 A.M., instead of her regularly scheduled time of
8:30 A.M. The review examiner concluded that her discharge on October
22 was solely for deliberate misconduct in wilful disregard of the employ-
ing unit's interest within the meaning of G. L. c. 151A, § 25 (e) (2). Moore
claims that the board's conclusion that she was fired for arriving at 9:30
on October 22 is not supported by substantial evidence. We do not agree.

At the hearing, Moore said that she knew her employer wanted the
switchboard opened at 8:30 A.M. She knew the hours of her job were 8:30
A.M. to 4:30 P.M. On October 22, Moore again came to work at 9:30
A.M., and she was discharged.

The purpose of § 25 (e) (2) is "to deny benefits to a claimant who has
brought about his own unemployment through intentional disregard of
standards of behavior which his employer has a right to expect." *Garfield*
v. *Director of the Div. of Employment Security*, 377 Mass. 94, 97 (1979).
Moore's failure to report for work at 8:30 A.M. could be found to be "in-
tentional disregard of the standards of behavior which [her] employer
ha[d] a right to expect." *Id.*

Moore claims that her absences from her job in order to obtain a fuel
allowance and her quarrel with her supervisor were a significant part of
the decision to discharge her, and those reasons do not constitute deliber-
ate misconduct. In support of her argument Moore points to the letter of
discharge which does not clearly state that her employment was termi-
nated for tardiness. The short answer is that Moore's employment was
not terminated after her absences or after she asked her supervisor to
retract her dismissal; she was fired after she deliberately reported for
work at 9:30 A.M., instead of 8:30 A.M. While Moore was free to argue
that her employment was terminated because of her absences or the quar-
rel with her supervisor, the board was not required to believe her. "It is
the agency's responsibility to weigh the evidence, find the facts, and de-
cide the issues." *Manias* v. *Director of the Div. of Employment Sec.*, 388
Mass. 201, 205 (1983). *Graves* v. *Director of the Div. of Employment
Sec.*, 384 Mass. 766, 769 (1981). The board could conclude that Moore's
decision to arrive at work at 9:30 A.M. was "deliberate misconduct" with-

in the meaning of the statute.[3]   The judgment of the District Court is affirmed.

*So ordered.*

*William M. Leonard* for the employee.

*George J. Mahanna,* Assistant Attorney General, for Director of the Division of Employment Security.

---

[3] Since we conclude that the board was warranted in determining that the discharge was attributable *solely* to *wilful* misconduct, we need not consider whether a discharge, based in part on wilful misconduct and in part on legitimate excusable reasons, disqualifies an employee from benefits under G. L. c. 151A, § 25 (*e*) (2). See *Garfield* v. *Director of the Div. of Employment Sec., supra* at 96 n.2.  At oral argument, Moore raised additional issues.  An "appellate court need not pass upon questions or issues not argued in the brief."  Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

