DONALD C. GRISE *vs*. DIRECTOR OF THE DIVISION OF
EMPLOYMENT SECURITY.

Hampshire.   September 14, 1984. — November 8, 1984.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Employment Security,* Eligibility for benefits, Misconduct of employee,
Findings.

Where the evidence adduced at a hearing before a review examiner of the
Division of Employment Security warranted findings that the claimant,
after a verbal disagreement with a supervisor, and upon learning that
he was scheduled to again work with her, left work without authorization
and without either notifying the supervisor or making himself available
for contact during the remainder of his work shift, the examiner properly
concluded that the employee had engaged in deliberate misconduct in
wilful disregard of his employer's interest. [273-275]

Although a subsidiary finding of a review examiner of the Division of Em-
ployment Security was not supported by substantial evidence, the error
was not material to the examiner's evaluation of the claimant's miscon-
duct and provided no grounds to set aside a decision denying unemploy-
ment compensation benefits to the claimant. [275]

CIVIL ACTION commenced in the Hampshire Division of the
District Court Department on October 18, 1982.

The case was heard by *Ann M. Gibbons*, J.

*Jim Hammerschmith* for the claimant.

*Robin U. Ultcht,* Assistant Attorney General, for the defendant.

HENNESSEY, C.J. After being discharged from his job as a
cook at the Colonial Rest Home on May 21, 1982, Donald C.
Grise filed a claim for unemployment compensation benefits
pursuant to G. L. c. 151A. His claim was denied on the ground
that his discharge was due to "deliberate misconduct in wilful
disregard of the employing unit's interest." G. L. c. 151A,
§ 25 (*e*) (2).[1] The claimant appealed that determination and

---

[1] General Laws c. 151A, § 25, as appearing in St. 1975, c. 684, § 78,
provides as follows: "No waiting period shall be allowed and no bene-

requested a hearing pursuant to G. L. c. 151A, § 39. The case was heard by a review examiner of the Division of Employment Security (division) who affirmed the claimant's disqualification from benefits on September 8, 1982.

The division's board of review (board) denied Grise's application for further review, thus making the findings of the examiner the final decision of the board pursuant to G. L. c. 151A, § 41 (*c*), as appearing in St. 1976, c. 473, § 14. A District Court judge affirmed the board's decision and the claimant appealed to this court as provided in G. L. c. 151A, § 42.

We summarize the review examiner's findings of fact. The claimant was employed by Colonial Rest Home intermittently over a period of seven years. In March, 1982, the rest home acquired a new assistant administrator, Marilyn Campbell, who became Grise's supervisor. A personality conflict developed between Grise and Campbell. In May, 1982, following a major dispute over the claimant's work, Grise telephoned Campbell to apologize for the argument and indicated that he expected to be discharged. In response Campbell told the claimant that their problems were not severe and could be worked out satisfactorily.

On May 21, 1982, Grise was scheduled to work the 7 A.M. to 1 P.M. shift. He arrived at 6:45 A.M. and spoke with Paula Lizotte, a night aide, who finished work at 7 A.M. During their conversation, Lizotte mentioned that Campbell would be working the claimant's shift with him. Grise replied, "I can't work with her, I'm leaving." When Campbell arrived five minutes later, Grise had left. Campbell called Grise's home throughout the day, but was unable to reach him until midafternoon at which time she informed Grise that he was discharged for leaving the premises without authorization.

fits shall be paid to an individual under this chapter . . . (*e*) [f]or the period of unemployment next ensuing and until the individual has had at least four weeks of work and in each of said weeks has earned an amount equivalent to or in excess of his weekly benefit amount after he has left his work . . . (2) by discharge shown to the satisfaction of the director to be attributable solely to deliberate misconduct in wilful disregard of the employing unit's interest . . . ."

The review examiner found that Grise "initiated his own discharge when, after a verbal disagreement with a supervisor, and upon learning that he was scheduled to again work with her, [he] left the employer's premises without notification, delegating such notification to a night shift aide,[2] [and] then did not go directly home or otherwise call or make himself available for the rest of his work shift." He concluded that "[Grise's] ensuing discharge under these conditions [was] due solely to deliberate misconduct in wilful disregard of the employing unit['s] interest within the meaning of Section 25 (e) (2)." We conclude that the examiner's decision, as upheld by the board and the District Court judge, is supported by substantial evidence, without error of law, and made upon lawful procedure as required by G. L. c. 30A. We affirm.

Grise challenges the examiner's findings on two grounds. First, he claims that his discharge was improper because he did not engage in deliberate misconduct in wilful disregard of his employer's interest. Second, he argues that the examiner's subsidiary findings were unsupported by substantial evidence.

In determining whether a discharged employee is precluded from receiving unemployment compensation benefits under G. L. c. 151A, § 25 (e) (2), we consider whether the claimant "brought about his own unemployment through intentional disregard of standards of behavior which his employer has a right to expect." *Garfield* v. *Director of the Div. of Employment Sec.,* 377 Mass. 94, 97 (1979). To warrant disapproval of

[2] The claimant makes much of this statement, arguing that the examiner improperly denied him benefits because of his attempted delegation of notice to another employee. In contrast, Grise calls our attention to Campbell's testimony that he was discharged for failing to notify her in any manner of his absence. Grise contends that the examiner believed he had delegated notice to a fellow employee and therefore he is entitled to benefits. According to the claimant, delegation of notice does not rise to the level of misconduct warranting disqualification under § 25 (e) (2). We need not reach this issue. Despite ambiguous phrases in the examiner's findings, when they are read in their entirety it is clear that the claimant's testimony on this score was not found credible. Instead the examiner credited the night aide's testimony that the claimant did not ask her to notify the supervisor of his absence. Therefore, Grise's alleged delegation of notice was not critical to his disqualification under § 25 (e) (2).

benefits, the board must make findings as to both the claimant's "deliberate misconduct" and "wilful disregard" of the employer's interest. *Jean* v. *Director of the Div. of Employment Sec.*, 391 Mass. 206, 208 (1984). *Torres* v. *Director of the Div. of Employment Sec.*, 387 Mass. 776, 778-779 (1982).

The examiner concluded from conflicting testimony that Grise engaged in deliberate misconduct when he left work without authorization and without either notifying his supervisor or making himself available for contact during the remainder of his work shift. The examiner found that Grise went home May 21, 1982, to avoid working with Marilyn Campbell, a supervisor with whom he did not get along. Grise contends that he left work on May 21 due to illness, that he instructed a night aide to inform his supervisor that he would be absent, and that he did not call or make himself available for contact because he assumed the night aide had taken care of notifying his supervisor. However, both the supervisor and the night aide testified that on the date of his absence Grise did not inform either of them that he was ill. According to the night aide, "He [Grise] said, 'I can't work with her,' [the supervisor] and he left." Campbell testified that when she finally contacted Grise, "All he told me is . . . he knew he couldn't stay." Contrary to Grise's testimony, the night aide did not indicate that the claimant asked her to inform Campbell of his absence. Grise testified that he did not go directly home after leaving work and that when he arrived home, he unplugged the telephone. The supervisor testified that she was unable to reach the claimant until midafternoon, after the end of his scheduled shift.

The examiner's findings indicate that he weighed this conflicting testimony and did not credit Grise's explanations for his conduct: "The claimant could not explain why he did not remain at his work site for another five minutes to explain his physical problems, why he delegated the responsibility to a night aide or why he thereafter made no attempt to contact his employer or make himself available for contact." The review examiner bears "[t]he responsibility for determining the credibility and weight of that testimony," and we find "nothing in the

record before us to warrant the substitution of our judgment for [his]." *Trustees of Deerfield Academy* v. *Director of the Div. of Employment Sec.*, 382 Mass. 26, 31-32 (1980). *Hawkins* v. *Director of the Div. of Employment Sec.*, 392 Mass. 305, 307 (1984). There is sufficient evidence to support the examiner's conclusion that Grise's behavior constituted deliberate misconduct.

In addition the examiner found that Grise's actions were in wilful disregard of his employer's interest. In making this determination, the "critical factual issue" is the employee's state of mind at the time of the misconduct. *Jean, supra* at 209. *Torres, supra* at 779. In the absence of findings on state of mind, the agency decision cannot stand. *Reavey* v. *Director of the Div. of Employment Sec.*, 377 Mass. 913, 914 (1979). However, a specific finding regarding state of mind is not required where "obviously intentional" conduct is present. *Sharon* v. *Director of the Div. of Employment Sec.*, 390 Mass. 376, 378 (1983). In this case there is an adequate basis to support the conclusion that Grise's misconduct was "obviously intentional."

The claimant testified that on the date of his absence he knew his supervisor would be shorthanded. Nevertheless, he left work at the start of his shift, after telling a night aide he could not work with his supervisor. He then failed to advise his supervisor and took measures to guarantee that she could not communicate with him until his scheduled shift had ended. This course of conduct constitutes sufficient evidence of the claimant's wilful disregard of his employer's interest.

Finally, Grise argues that the subsidiary findings of the review examiner are not supported by substantial evidence. He claims the examiner erred in finding that Grise did not learn he was to work with his supervisor Campbell until he arrived on the job May 21, 1982. Both Grise and Campbell testified that she had informed him of this fact in an earlier conversation. Although Grise's contention appears to be correct, the error was not material to the examiner's evaluation of the claimant's misconduct on May 21 and provides no grounds to set aside the board's decision.

*Judgment affirmed.*