MICHAEL GARFIELD vs. DIRECTOR OF THE DIVISION OF
EMPLOYMENT SECURITY & another.

Middlesex. November 6, 1978. — January 12, 1979.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Employment Security,* Eligibility for benefits.

An applicant for unemployment benefits under G. L. c. 151A was
   erroneously denied such benefits by the Division of Employment
   Security where the deficiencies in the employee's job performance
   at the time he was discharged did not constitute deliberate and
   wilful misconduct within the meaning of c. 151A, § 25(e)(2). [95-100]

PETITION filed in the Third District Court of Eastern
Middlesex on June 23, 1977.

The case was heard by *Feloney,* J.

*Steven L. Baumohl* for the plaintiff.

*Frank J. Scharaffa,* Assistant Attorney General, for
the defendant.

LIACOS, J. The appellant Michael Garfield was dis-
charged from his job as manager of a retail health food
store on November 15, 1976. He applied for unemploy-
ment compensation. After a hearing held on January 12,
1977, the director of the Division of Employment Security
denied Garfield benefits on the ground that his discharge
came within the meaning of G. L. c. 151A, § 25 (e) (2), as
amended through St. 1975, c. 684, § 78.[1] Garfield appealed

---

[1] Section 25 provides: "No waiting period shall be allowed and no
benefits shall be paid to an individual under this chapter for—. . . (e)
For the period of unemployment next ensuing . . . after he has left his
work . . . (2) by discharge shown to the satisfaction of the director to
be attributable solely to deliberate misconduct in wilful disregard of
the employing unit's interest . . . ." The recent amendment of § 25
contained in St. 1977, c. 720, § 27, does not alter this language.

to the division's board of review. The board, through a single review examiner (G. L. c. 151A, § 41), took evidence, made findings of fact, and affirmed the decision of the director. A judge of the Third District Court of Eastern Middlesex upheld the board's decision and reported the case to this court. G. L. c. 151A, § 42. The record before us includes the evidence presented to the review examiner, his subsidiary findings of fact and his conclusions of law.

Garfield began working for Nature Food Centre (Nature Food) in November, 1972. He was discharged on November 15, 1976. At the time of his discharge, he was serving as manager of a company retail store, a post he had held for approximately one and one-half years. The examiner found that during his tenure, the appellant was a good salesman and did a creditable job of public relations for the store. The examiner also found, however, that Garfield did not manage the store in the manner prescribed by the employer. This conclusion rests on certain deficiencies in Garfield's job performance evident at the time he was fired. Specifically, he had failed to keep the store's product book (order book) up to date as instructed; the week before his discharge he had rearranged the store schedule in order to attend a health food convention in New York City without contacting the district manager as required by a company policy manual; on the day he was discharged, the health inspector complained about the store's condition; and, during Garfield's tenure as manager, the store's profit margin had declined. From these facts, the examiner concluded that Garifeld's discharge was due to misconduct within the meaning of G. L. c. 151A, § 25(e)(2).

When a discharged worker seeks compensation, the issue before the board is not whether the employer was justified in discharging the claimant but whether the Legislature intended that benefits should be denied in the circumstances. See *Goodridge* v. *Director of the Div. of Employment Security*, 375 Mass. 434, 436 (1978). Garfield

contends that the deficiencies in his performance which precipitated his discharge neither individually nor collectively justify disqualification under the statute.[2] He thus challenges the manner in which the board applied § 25(e)(2) to the circumstances of his case. Application of law to fact in the first instance is a function specifically committed to the agency. This function calls on the agency's "experience, technical competence, and specialized knowledge"; the resulting decision is entitled to some weight and should not be disturbed unless unsupported by substantial evidence. G. L. c. 30A, § 14 (7). See *Keough* v. *Director of the Div. of Employment Security,* 370 Mass. 1, 4-5 (1976); *Raytheon Co.* v. *Director of the Div. of Employment Security,* 364 Mass. 593, 595-596 (1974). Cf. *Olechnicky* v. *Director of the Div. of Employment Security,* 325 Mass. 660, 663 (1950) (decided before enactment of G. L. c. 30A, § 14 [8], now § 14 [7]). On careful examination of the entire record, we conclude that the conduct described by the review examiner as the basis for Garfield's discharge is not deliberate and wilful misconduct. We therefore reverse.

Only recently have we begun to explore the scope of § 25(e)(2). See *Goodridge* v. *Director of the Div. of Employment Security, supra* at 436. We therefore begin our analysis with an overview of c. 151A. In enacting this chapter, the Legislature recognized that job layoffs can occur for countless reasons unrelated to the individual worker's willingness and desire to stay at his job. Under such circumstances, the compensation scheme aims to "lighten the burden" of unemployment (G. L. c. 151A, § 74) for those who are "compelled to leave work through

---

[2] In cursory fashion, Garfield raises an alternative argument. He suggests that even if some of the cited deficiencies constitute statutory misconduct, some do not; consequently, his discharge is not attributable *solely* to wilful misconduct. But cf. *Giddens* v. *Employment Security Comm'n,* 4 Mich. App. 526 (1966); *Checker Cab Co.* v. *Industrial Comm'n,* 242 Wis. 429 (1943). In light of the view we take of this case, we do not reach this issue.

no 'fault' of their own, whatever the source of the compulsion, personal or employer-initiated." See *Raytheon Co.* v. *Director of the Div. of Employment Security,* 364 Mass. 593, 596 (1974); Kempfer, Disqualifications for Voluntary Leaving and Misconduct, 55 Yale L.J. 147, 149 (1945). Turning to the language of § 25(*e*)(2), we have already noted that the words "deliberate" and "wilful" suggest purposeful action or inaction. *Goodridge* v. *Director of the Div. of Employment Security, supra* at 436. The apparent purpose of § 25(*e*)(2) then is to deny benefits to a claimant who has brought about his own unemployment through intentional disregard of standards of behavior which his employer has a right to expect. When a worker is ill-equipped for his job or has a good faith lapse in judgment or attention, any resulting conduct contrary to the employer's interest is unintentional; a related discharge is not the worker's intentional fault, and there is no basis under § 25(*e*)(2) for denying benefits. This construction squares with the decisions of other jurisdictions. See, e.g., *Maywood Glass Co.* v. *Stewart,* 170 Cal. App. 2d 719, 724 (1959); *Kentucky Fried Chicken of Altoona, Inc.* v. *Unemployment Compensation Bd. of Review,* 10 Pa. Commw. Ct. 90, 97 (1973); *Boynton Cab Co.* v. *Neubeck,* 237 Wis. 249, 259-260 (1941). Annot., 26 A. L. R. 3d 1356 (1969 & Supp. 1978). This analysis suggests that the critical issue in determining whether disqualification is warranted is the claimant's state of mind in performing the acts that cause his discharge. See *Smith* v. *Director of the Div. of Employment Security,* 376 Mass. 563, 566 (1978); *Goodridge* v. *Director of the Div. of Employment Security, supra* at 437. In evaluating its subsidiary findings, the board must therefore take into account the worker's knowledge of the employer's expectation, the reasonableness of that expectation and the presence of any mitigating factors. See 76 Am. Jur. 2d Unemployment Compensation §§ 52-55 (1975 & Supp. 1978).

The record in the instant case fails to support the conclusion that those elements of Garfield's performance

found by his employer to warrant discharge were the result of a wrongful intent. Although Garfield did not keep the product book precisely as directed, he was neither insubordinate nor recalcitrant in the face of the initial warning on the subject. See generally, Annot., 26 A. L. R. 3d 1333 (1969 & Supp. 1978). There was undisputed evidence that his performance in this regard showed marked improvement; moreover, he received no additional warnings about maintenance of the product book prior to his discharge.

As for the second reason given for Garfield's discharge —rearranging the store schedule without notifying the district manager[3]—Garfield testified that he learned of the event requiring rescheduling after he had sent in the work schedule and at a time when he believed the district manager to be out of town. He did not believe he could reach her about the planned change. The review examiner accepts this testimony but implies that failure to leave a message with the "contact store" evinces an intentional disregard for the employer's interest. We disagree. The evidence reveals that, at worst, Garfield's failure to pursue such a course of action constituted a good faith error of judgment. Nothing before the review examiner suggested that as a rule store managers were required to leave word with the contact store when they had to rearrange the schedule on short notice and the district manager could not be notified by telephone. Accordingly, Garfield had no notice of this apparent requirement. Moreover, Garfield's actions indicate an intent to achieve the same ends served by notice. We note that he did not go to New York without telling anyone nor did he leave his store unprepared for his absence. Rather, he told his staff where he would be, set up the store schedule to

---

[3] This charge is distinct from failure to notify the employer of the reasons for absence which may constitute a voluntary leaving without good cause under G. L. c. 151A, § 25(e)(1). See Olechnicky v. Director of the Div. of Employment Security, 325 Mass. 660, 662-663 (1950).

accommodate his absence, and left a telephone number where he could be reached.

The final two findings of the review examiner—that the health inspector "complained to the district manager and said that he could make trouble because of the condition of the store" and that the profit margin had dropped —are plainly inconclusive. They leave to imagination the notice, extent and cause of the objectionable condition and provide no basis for judging Garfield's state of mind.[4] Conclusions of wilful misconduct must rest on findings of specific acts or omissions of the worker which adversely affect the employer's interest. Cf. *Unemployment Compensation Bd. of Review* v. *Kullen*, 21 Pa. Commw. Ct. 488, 490 (1975). The only specific evidence of the store's sanitary condition that might reflect on Garfield's job performance is the health inspector's code compliance form. It shows that on the day of Garfield's discharge the inspector found only two code violations, both, in the terms of the inspection form, noncritical in nature. The store received a rating of ninety-seven out of 100. There is no evidence to suggest that the violations were serious or represented chronic inattention on the part of Garfield.[5]

---

[4] The finding relative to the health inspector is also defective because it rests on the uncorroborated and contradicted testimony of an individual not even present when the statement was allegedly made. See *Goodridge* v. *Director of the Div. of Employment Security*, 375 Mass. 434 (1978). The only evidence of the inspector's oral statement is the testimony of James Weir, Nature Food's district manager at the time of the review examiner's hearing in the instant case. Weir based his testimony not on personal knowledge but on a discussion with Margaret Calder, who was present when the statement was allegedly made. Garfield, the only person to testify who was present when the inspector visited the store, denied that any negative statement was made.

[5] The District Court judge cites a warning about unclean conditions issued eight months before Garfield's discharge as evidence that the violations noted by the health inspector were part of a continuing course of conduct. That warning pertained to the condition of the floors about which there was uncontradicted evidence that they were

In sum, none of the deficiencies in Garfield's job performance justifies disqualification. Even considered collectively, they fail to suggest wilful disregard of Nature Food's interest. Cf. *Giddens* v. *Employment Security Comm'n,* 4 Mich. App. 526, 535 (1966); *Elias* v. *Unemployment Compensation Bd. of Review,* 15 Pa. Commw. Ct. 263 (1974). The judgment is reversed. Judgment shall be entered in the District Court remanding the proceeding to the Division of Employment Security for entry of an order in accordance with this opinion.

*So ordered.*

––––––––––

old and difficult to maintain. In any event, there is no evidence that the code violations were due to continuous inattention to the floors.

