JULIO TORRES vs. DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY & another.[1]

Middlesex. September 17, 1982. — December 23, 1982.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Employment Security*, Misconduct by employee, Findings by board of review, Eligibility for benefits.

Where a review examiner of the Division of Employment Security determined that the discharge of an applicant for unemployment benefits "was attributable solely to deliberate misconduct in wilful disregard of the employing unit's interest" but made no finding as to the employee's state of mind, it was impossible to determine whether the employee's acts indicated, as matter of law, intentional conduct or inaction which the employee knew was contrary to the employer's interest and, therefore, the case was to be remanded to the division for further proceedings. [778-781]

In a proceeding to determine whether a claimant was entitled to receive unemployment benefits under G. L. c. 151A, evidence on the issue whether the employee had been discharged for his activities as a union steward was relevant to the statutory requirement that benefits be denied when a discharge is shown to be attributable solely to deliberate misconduct in wilful disregard of the employer's interest. [781]

There was no merit to an employee's contention that his employer should have been barred from participating in a hearing before a review examiner of the Division of Employment Security because of its failure to return the notice of the employee's claim for unemployment compensation within the period prescribed by G. L. c. 151A, § 38 (b), where the notice had been misaddressed by the agency when originally mailed to the employer. [781-782]

CIVIL ACTION commenced in the Third Eastern Middlesex Division of the District Court Department on March 19, 1981.

The case was heard by *Nixon*, J.

[1] Federal Management Co., Inc. Only the employer, Federal Management, has appealed the decision of the District Court.

*John C. Ottenberg* for the employer.

*Brian J. McAuliffe* for the employee.

*George J. Mahanna,* Assistant Attorney General, for Director of the Division of Employment Security, was present but did not argue.

LYNCH, J. The employee was disqualified from receiving unemployment benefits after a hearing and decision by a review examiner of the Division of Employment Security that his discharge from employment "was attributable solely to deliberate misconduct in wilful disregard of the employing unit's interest within the meaning of [G. L. c. 151A, § 25 *(e)* (2)]."[2] A board of review denied the employee's application for review, thus accepting the decision of the review examiner. See *Schulte* v. *Director of the Div. of Employment Sec.,* 376 Mass. 107, 109 (1978); G. L. c. 151A, § 41 *(c).* On appeal, a District Court judge reversed the agency's decision, holding that there was "no substantial evidence to support the Review Examiner's decision that the claimant's conduct was 'deliberate' within the meaning of Section 25 (e) (2)." The judge directed that the employee be compensated for the excluded period and reported the case to this court as required by statute. G. L. c. 151A, § 42. On the basis of the record before us, including the transcript of the hearing conducted by the review examiner together with his findings of fact and conclusion of law, we remand the case to the Division of Employment Security for further proceedings.

On the morning of October 30, 1980, Laura Ensler, assistant manager of Federal Management Co., Inc., signalled the employee, a maintenance worker since July, 1979, by

---

[2] General Laws c. 151A, § 25 *(e)* (2), as appearing in St. 1975, c. 684, § 78, provides in material part: "No waiting period shall be allowed and no benefits shall be paid to an individual under this chapter . . . *(e)* For the period of unemployment next ensuing and until the individual has had at least four weeks of work and in each of said weeks has earned an amount equivalent to or in excess of his weekly benefit amount after he has left work . . . (2) by discharge shown to the satisfaction of the director to be attributable solely to deliberate misconduct in wilful disregard of the employing unit's interest . . . ."

means of an electronic beeper. At about the same time, Ensler had dispatched two other workers to unload a truck of building supplies, and she wanted the employee to assist them. Some minutes later the employee responded by telephone; he had been up to that time installing locks on the nineteenth floor of another building of the residential complex managed by the employer. Ensler testified that when she asked him to report to the truck to help unload, he responded that was not a "shipping and receiving department" and that he would see her tomorrow. She answered that he had "better come down," and the conversation ended. The employee does not dispute that this exchange took place, but contends that he was joking with Ensler. He testified that it was not his intention not to unload the truck, and that "as soon as I hung up, I went to the elevator and went downstairs." The review examiner found that the employee did report fifteen to twenty minutes later "to where the truck was to be unloaded and found the truck had been unloaded [by the other two workers] and left." The employee then proceeded to Ensler's office where, in front of her and her secretary, he said, "Laura . . . you're an A-S-S-H-O-L-E." He repeated this spelled-out epithet to another employee. There was conflicting testimony as to whether the employee was joking or upset when he uttered these words. The operations manager of Federal Management, Joseph McVay, Ensler, the employee, and a fellow employee all testified that they had used such language on the job. McVay also testified that he would not tolerate vulgar namecalling in the presence of others, and that he had sought to impress upon his employees that Ensler's authority was to be respected.

The review examiner found that the employee's discharge, the day after these incidents occurred, was due to his "insubordination when he failed to obey a direct order from the assistant manager to report to unload a truck." The examiner concluded that since the employee did not unload the truck and acknowledged his conduct described above, his discharge was "attributable solely to deliberate misconduct in wilful disregard of the employing unit's inter-

est." We have stated repeatedly in cases arising under
G. L. c. 151A, § 25 (*e*) (2), that a finding of deliberate
misconduct will not itself disqualify a discharged employee
from receiving unemployment benefits. Such misconduct
must also have been perpetrated in "wilful disregard" of the
employer's interest. *Smith* v. *Director of the Div. of
Employment Sec.*, 376 Mass. 563, 566 (1978). *Goodridge* v.
*Director of the Div. of Employment Sec.*, 375 Mass. 434,
436 (1978). The statute's purpose is to disqualify those
claimants who have brought their unemployment upon
themselves "through intentional disregard of standards of
behavior which [the] employer has a right to expect." *Gar-
field* v. *Director of the Div. of Employment Sec.*, 377 Mass.
94, 97 (1979). The critical factual issue in determining
whether an employee's discharge resulted from his wilful or
intentional misconduct is the employee's state of mind at the
time of his misconduct. *Smith* v. *Director of the Div. of
Employment Sec.*, 384 Mass. 758, 760 (1981), and cases
cited. We have emphasized the necessity of findings to the
proper exercise of our appellate function in these cases.
*Smith* v. *Director of the Div. of Employment Sec.*, 376
Mass. at 565-566. In the absence of any finding on the
material factual issue of the employee's state of mind, the
agency's decision cannot stand even if supported by substan-
tial evidence. *Reavey* v. *Director of the Div. of Employ-
ment Sec.*, 377 Mass. 913, 913-914 (1979).

The record before us is bare of such finding. The review
examiner attributed the employee's discharge to insubordi-
nation through failure "to obey a direct order . . . to report
to unload a truck." Since he also made a subsidiary finding
that the employee did report to the unloading site, we can-
not determine whether he disbelieved the employee's testi-
mony that he descended as promptly as he could to the site
after receiving the order, or concluded that the employee's
remarks to the assistant manager on the telephone consti-
tuted "insubordination." Cf. *Smith* v. *Director of the Div.
of Employment Sec.*, 376 Mass. at 565-566. It is also not
clear whether the employee's later use of a vulgar epithet

was weighed by the examiner solely with reference to the unloading incident, or was considered by him as a separate act of misconduct. The employee's state of mind would bear on any of these views of the evidence, and the examiner was required to make such findings.[3] The fact that the truck was unloaded by others before the employee arrived is not substantial evidence of deliberate misconduct in wilful disregard of the employer's interest. And while the weight and credibility of the testimony are matters for the hearing officer's determination and not for ours, *Lewis* v. *Director of the Div. of Employment Sec.*, 379 Mass. 918, 919 (1980), a review examiner may not, as he did here, facilely impute "wilful disregard" of the employer's interest to the employee's mere acknowledgment that the facts leading up to his discharge were as described by his employer. We have said that the administrative reviewing body "must take into account the worker's knowledge of the employer's expectation, the reasonableness of that expectation and the presence of any mitigating factors." *Garfield* v. *Director of the Div. of Employment Sec.*, 377 Mass. 94, 97 (1979). In these

---

[3] We do not accept the employer's suggestion that the term "insubordination" implies the "wilful disregard of the employing unit's interest" required for denial of benefits under G. L. c. 151A, § 25 (*e*) (2). Compare *Oehme* v. *Whittemore-Wright Co.*, 279 Mass. 558, 563 (1932); *McIntosh* v. *Abbot*, 231 Mass. 180, 183 (1918). The record before us contains an incomplete reference to "insubordination" as described in the division's claim adjuster's handbook: "Claimant is discharged because of deliberate refusal to perform his work as director [*sic*] or to perform particular assigned task . . . ." From this abbreviated language we cannot determine if the division contemplates a stated finding on the state of mind of an employee who refuses to perform a task. Nevertheless, our most recent cases construing the statute have made clear that "the employee's 'state of mind' is 'an important factual issue,' . . . so that, for example, if an employee believed that violations of a certain rule were habitually ignored or disregarded as unimportant by the employer, this might be a factor to take into account. Not every transgression of a rule automatically justifies a disqualification from unemployment benefits, the general principle being that '[w]hile the violation of a work rule may well justify the discharge of an employee, such a violation does not necessarily amount to misconduct for unemployment compensation purposes'" (citations omitted). *Smith* v. *Director of the Div. of Employment Sec.*, 376 Mass. 563, 566-567 (1978).

circumstances two basic inquiries are appropriate: whether the employee intended to and did refuse to obey a direct order of his employer, and whether the employee knew, either from Ensler's cessation of the use of coarse language after she became assistant manager, or from communications to the maintenance staff from her or from McVay with respect to her authority, that vulgarity was not or would not continue to be tolerated among the work force. Cf. *Johnson v. Director of the Div. of Employment Sec.,* 377 Mass. 229, 229-230 (1979). On the present record, we cannot say that the employee's acts indicate as a matter of law "intentional conduct or inaction which the employee knew was contrary to the employer's interest." *Goodridge* v. *Director of the Div. of Employment Sec., supra* at 436.

The employee also complains that the review examiner failed to consider evidence that he had been discharged for his activities as a union steward. Such evidence would be directly relevant to the statutory requirement that benefits be denied when a discharge is "shown to the satisfaction of the director [of the Division of Employment Security] to be attributable solely to deliberate misconduct in wilful disregard of the employing unit's interest." The review examiner permitted most of the evidence offered by the employee on this issue, excluding only one question. We agree with the employee that, on remand, the issue should be fully developed and a determination should be made whether the discharge was in part attributable to another cause. Cf. *Trustees of Deerfield Academy* v. *Director of the Div. of Employment Sec.,* 382 Mass. 26, 31-33 (1980).

We find no merit in the employee's final contention that the employer should have been barred from participating in the hearing because no good cause was shown for its failure to return the notice of the claim within the period prescribed by G. L. c. 151A, § 38 (*b*). The record clearly shows that the notice was misaddressed by the agency when originally mailed to the employer. Not only does the statute expressly provide for such good cause failure to respond, but there is nothing before us to indicate that the employee

raised this issue before the review examiner or the board of review.  See *Conley* v. *Director of the Div. of Employment Sec.*, 340 Mass. 315, 320 (1960).

The decision of the District Court is reversed.  Judgment is to be entered remanding the case to the Division of Employment Security for further proceedings consistent with this opinion.

*So ordered.*