JOSEPH DiNATALE *vs.* DIRECTOR OF THE DIVISION OF
EMPLOYMENT SECURITY & others.[1]

Middlesex. September 13, 1984. — January 16, 1985.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Employment Security,* Misconduct of employee, Eligibility for benefits.

An employee who was discharged because he drove his employer's truck to
his home during working hours, contrary to a warning he had received
eight months earlier, could not be denied unemployment benefits on the
ground that the discharge was "solely due to deliberate misconduct in
wilful disregard of the employing unit's interest" in the absence of
findings as to his state of mind at the time of his misconduct, where the
employee might reasonably have believed that the only conditions to
which he was subject were those contained in a written agreement which
he had entered into with his employer on returning from a leave of
absence at least six months after the warning and which did not prohibit
him from taking the truck home. [657-659]


CIVIL ACTION commenced in the Third Eastern Middlesex
Division of the District Court Department on July 13, 1983.

The case was heard by *Wendie I. Gershengorn,* J.

*Glenn W. Falk (James V. Moore* with him) for the employee.

*Robin M. Ultcht,* Assistant Attorney General, for Director
of the Division of Employment Security.

LIACOS, J. On December 9, 1982, Joseph DiNatale was
discharged from his job as a truck driver with the Boston Sand
& Gravel Co. He filed a claim for unemployment compensation
benefits with the Division of Employment Security (division),
which was denied under G. L. c. 151A, § 25 (*e*) (2).[2] He ap-

---

[1] The review examiner and Boston Sand & Gravel Co.

[2] General Laws c. 151A, § 25, as amended through St. 1982, c. 489,
§ 5, provides, in part: "[N]o benefits shall be paid to an individual under
this chapter . . . . (*e*) For the period of unemployment next ensuing and
until the individual has had at least four weeks of work and in each of said

pealed the denial of his claim, and a hearing took place before a review examiner on February 28, 1983. On March 14, 1983, the review examiner affirmed the denial of unemployment compensation benefits to DiNatale, finding that his discharge was due "solely to deliberate misconduct in wilful disregard of the employing unit's interest." DiNatale appealed to the board of review (board). The board, after consideration of written argument and of the record, affirmed the review examiner's decision. DiNatale then appealed to the Cambridge District Court. A judge of the District Court affirmed the board's decision. DiNatale now appeals to this court under G. L. c. 151A, § 42.

We summarize the review examiner's findings of fact.[3] DiNatale was discharged from his job because he violated an agreement with his employer. This agreement arose out of an incident in March, 1982, when DiNatale took his truck home during working hours. The truck became disabled, and the narrowness of his residential street made it difficult to service the truck. Following that incident, DiNatale agreed not to take his truck home again, and understood that he would be discharged if he violated this agreement. DiNatale had had problems with alcohol, and his employer was concerned that DiNatale would be tempted to drink if he took his truck home during working hours. The review examiner found that the agreement not to take the truck home was in the interest of both the employer and the employee.

On December 9, 1982, the general manager of the company had reason to believe that DiNatale had driven a company truck to his home. He drove to DiNatale's home and saw the truck parked, with the motor running. The general manager took the keys out of the truck and informed DiNatale's son that someone would come for the truck later. Shortly thereafter, DiNatale came out of the house, started the truck, and drove

---

weeks has earned an amount equivalent to or in excess of his weekly benefit amount after he has left his work . . . (2) by discharge shown to the satisfaction of the director to be attributable solely to deliberate misconduct in wilful disregard of the employing unit's interest . . . ."

[3] The board adopted the findings of the review examiner.

back to the company's place of business. When he arrived, the general manager discharged him.

The plaintiff contends that the decision of the review examiner should be reversed because it is not supported by substantial evidence. In the alternative, he argues that the review examiner failed to make the necessary findings as to his state of mind, and that the case should be remanded for these findings. We do not reach DiNatale's first argument, because we agree that the record lacks the necessary findings as to his state of mind at the time of the misconduct leading to his discharge. See *Torres* v. *Director of the Div. of Employmennt Sec.,* 387 Mass. 776, 779 (1982).

To disqualify a claimant for unemployment compensation benefits under G. L. c. 151A, § 25 (*e*) (2), the division must find both that the claimant engaged in "deliberate misconduct" and that such misconduct was in "wilful disregard" of the employer's interest. See, e.g., *Jean* v. *Director of the Div. of Employment Sec.,* 391 Mass. 206, 208-209 (1984), and *Torres, supra.* Moreover, the "critical factual issue in determining whether an employee's discharge resulted from his wilful or intentional misconduct is the employee's state of mind at the time of his misconduct." *Torres, supra.* See *Reavey* v. *Director of the Div. of Employment Sec.,* 377 Mass. 913, 914 (1979). In the present case the review examiner found that DiNatale agreed not to take the truck home and knew that, if he did take the truck home, he would be discharged. The division argues that this finding is sufficient to satisfy the requirement for findings as to the claimant's state of mind on December 9, 1982.

We have held that a finding that a claimant disregarded a warning, knowing that the consequence of such conduct would be discharge from employment, can be a sufficient finding as to state of mind under G. L. c. 151A, § 25 (*e*) (2). It is not sufficient in this case, however. In *Lycurgus* v. *Director of the Div. of Employment Sec.,* 391 Mass. 623 (1984), we held that disqualification under G. L. c. 151A, § 25 (*e*) (2), was proper when the claimant was warned that his tardiness would result in discharge, and he was tardy. See *Moore* v. *Director of the Div. of Employment Sec.,* 390 Mass. 1004 (1983), for a

similar tardiness case. See also *Rioni* v. *Director of the Div. of Employment Sec.,* 392 Mass. 436, 437 (1984); *Hawkins* v. *Director of the Div. of Employment Sec.,* 392 Mass. 305 (1984). In *Lycurgus,* however, one week prior to the discharge, the employer gave the claimant a written warning that he would be discharged immediately if he were late. *Lycurgus, supra* at 625. In *Moore,* the employer gave a warning to the claimant the day before the discharge. *Moore, supra* at 1005.

The present case is unlike *Lycurgus* or *Moore* because the warning, or agreement, was not one week or one day before the incident, but eight months before the incident. More importantly, certain facts bearing on the question of DiNatale's state of mind when he took the truck home on December 9, 1982, were unaccounted for by the review examiner. The review examiner found that in March, 1982, the general manager orally warned DiNatale that he would be discharged if he took the truck home again. Uncontested evidence introduced at the hearing established that later in March, 1982, DiNatale took a year's leave of absence from the company to treat his alcohol problem. However, in October, 1982, six months later, the company agreed to take DiNatale back early, under certain conditions. DiNatale signed a memorandum of agreeement with the Boston Sand & Gravel Co. which described those conditions. Under the memorandum, he was subject to immediate discharge if he drank any alcohol or evidenced any symptoms of drinking alcohol. He waived his right to file a grievance for such a discharge. Moreover, he was to be treated as a "new hire" for the purpose of determining benefits, but after three years of this "re-employment" he would receive credit for all years previously worked at the company.

The review examiner's findings make no reference to DiNatale's six-month leave subsequent to the oral agreement. Nor do the findings refer to the written memorandum of agreement pertaining to the conditions of DiNatale's reemployment. Yet these facts bear directly on DiNatale's state of mind when he took the truck home on December 9, 1982. If, for example, he reasonably did not believe that the oral agreement survived the six-month leave and the written memorandum of agreement

specifying the terms of his return to work, he cannot have engaged in deliberate misconduct in wilful disregard of the employer's interest. He reasonably may have believed that the only conditions to which he was subject were contained in the memorandum of agreement. Moreover, at the hearing, the general manager of the Boston Sand & Gravel Co. did not contend that DiNatale had been drinking on the date of his discharge, or that he had violated the written agreement. No evidence was introduced to that effect.

In the circumstances of this case, a finding that the claimant was warned, and knew the consequences of disobeying the warning, is an insufficient finding as to the claimant's state of mind to uphold a determination that he engaged in "deliberate misconduct in wilful disregard" of the employer's interest when he disobeyed the warning. Eight months intervened between the warning and the violation; during six of those eight months the claimant was on leave. The written agreement, signed by the parties when he returned to work, did not prohibit DiNatale from taking the truck home. We cannot conclude from such a record that the review examiner made adequate findings that DiNatale acted in wilful disregard of his employer's interest. In the absence of adequate findings on the basic issue of the employee's state of mind, the decision cannot stand. *Torres* v. *Director of the Div. of Employment Sec., supra. Reavey* v. *Director of the Div. of Employment Sec., supra.*

We reverse the judgment and remand the case to the District Court for remand to the division to make findings on DiNatale's state of mind when he took the truck home on December 9, 1982, taking into account the events which intervened between the warning and the violation of the warning. See *Jean* v. *Director of the Div. of Employment Sec.,* 391 Mass. 206 (1984) (remanding the case for further findings as to the employee's state of mind when he disregarded the employer's instructions). We note that DiNatale "bears the burden of persuasion" on the issue of his state of mind at the time of the misconduct leading to his discharge. *Smith* v. *Director of the Div. of Employment Sec.* 384 Mass. 758, 761 (1981).

*So ordered.*