JANICE JORGENSEN *vs*. DIRECTOR OF THE
DIVISION OF EMPLOYMENT SECURITY & another.[1]

Hampshire.   January 10, 1985. — May 13, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Employment Security*, Misconduct by employee, Eligibility for benefits.

A review examiner of the Division of Employment Security was warranted
in finding that a project coordinator employed by a federally-funded
State education program who authorized the falsification of payroll rec-
ords in order to circumvent the effect of impending budget cuts had
engaged in deliberate misconduct in wilful disregard of her employer's
interest and thus was disqualified by G. L. c. 151A, § 25 (*e*) (2), from
receiving unemployment benefits. [803-805]

CIVIL ACTION commenced in the Northampton Division of
the District Court Department on August 3, 1983.
The case was heard by *Richard F. Connon*, J.

*James W. Nagle* for the employer.
*Harry L. Miles* for the employee.

LIACOS, J. On November 24, 1982, Janice Jorgensen was
discharged from her position as a project coordinator with the
Massachusetts Migrant Education Program (MMEP). Jorgen-
sen filed an application for unemployment benefits with the
Division of Employment Security (division). Her application
was denied pursuant to G. L. c. 151A, § 25 (*e*) (2).[2] She

---

[1] Massachusetts Migrant Education Program.

[2] General Laws c. 151A, § 25, as amended through St. 1982, c. 489,
§ 5, provides, in part: "[N]o benefits shall be paid to an individual under
this chapter . . . .(*e*) For the period of unemployment next ensuing and
until the individual has had at least four weeks of work and in each of said
weeks has earned an amount equivalent to or in excess of his weekly benefit
amount after he has left his work . . . (2) by discharge shown to the
satisfaction of the director to be attributable solely to deliberate misconduct
in wilful disregard of the employing unit's interest . . . ."

appealed from this denial. A hearing was held before a review examiner on April 7, 1983, and May 20, 1983. The review examiner concluded that she had been properly disqualified from receiving unemployment compensation benefits under G. L. c. 151A, § 25 (*e*) (2). Jorgensen appealed to the board of review (board), which denied her application for review, thereby making the decision of the director the final decision of the board. See. G. L. c. 151A, § 41 (*c*). Jorgensen then sought judicial review in the Northampton District Court in accordance with G. L. c. 151A, § 42. The District Court judge set aside the decision of the director, holding, without specific findings, that the director's decision was not supported by substantial evidence. The MMEP appeals the judgment of the District Court judge to this court.[3] See G. L. c. 151A, § 42.

MMEP argues that the District Court judge erred in holding that the review examiner's decision was not supported by substantial evidence. See G. L. c. 151A, § 42; G. L. c. 30A, § 14 (7); G. L. c. 30A, § 1 (6), as amended through St. 1979, c. 795, § 3 ("'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion"). See also *Rioni* v. *Director of the Div. of Employment Sec.*, 392 Mass. 436, 438 (1984), and *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 465-467 (1981). We hold that the review examiner's findings and conclusion are supported by substantial evidence, and we reverse the judgment of the District Court judge.

We summarize the findings of the review examiner. Janice Jorgensen worked for several years as project coordinator for the western regional office of MMEP, a federally-funded educational program for the children of migrant workers. In meetings on September 2 and 3, 1982, Jorgensen and her assistant, Mollie Babize, among others, were informed by their superiors of a "major policy initiative" for fiscal year 1983, to be effective October 1, 1982 (the start of the 1983 fiscal year). Under that initiative, no one was to commit program funds without the written consent of the State director or the State program

___

[3] The director of the division has not participated in the appeal.

coordinator. Funds committed without prior approval would have to be reimbursed.[4] On September 9 and 10, 1982, other staff meetings were held at which a $2,000,000 reduction in the budget for fiscal year 1983 was announced.[5] This reduction represented a large share of the over-all budget and necessitated a substantial reduction in services for migrant children. Furthermore, inasmuch as fiscal year 1983 was to start three weeks later on October 1, 1982, the announcement of the budget cut threw the program into a "state of turmoil."

Jorgensen and Babize devised a plan to offset the immediate effects of the budget reduction. Jorgensen authorized Babize to instruct eight employees of the western region to indicate on their September 22, 1982, payroll sheets seventy hours of work not actually performed. Jorgensen further instructed Babize to approve these falsified payroll sheets, thus enabling the teachers to be paid for work not yet performed. The plan was for the teachers to perform the prepaid seventy hours of work after the end of the 1982 fiscal year, i.e., after their contracts would have terminated. The plan called for them to keep records of their work. As of the time of Jorgensen's discharge, most of these employees were off the payroll, and none of them had performed the full seventy hours of work. Jorgensen had no authorization for her plan. In addition, she approved the payment of promotional wages without authorization. Jorgensen left for a prepaid vacation shortly after this scheme was devised, and Babize carried out the plan in Jorgensen's absence.

Jorgensen was discharged on November 24, 1982, "for falsification of payroll records by requesting and approving preimbursement [*sic*] of work to be performed by subordinates

[4] The review examiner did not state the details of this meeting; he states generally, "[As] member of senior management . . . [Jorgensen] was aware of the employing unit's method of operations and its goals." However, the minutes of the September 2 and 3, 1982, meetings were submitted as evidence at the hearing and are before us as part of the record below.

[5] The review examiner describes this meeting as having taken place on September 2 and 3, 1982. This discrepancy is of no significance to the over-all outcome of the case.

at a later date." Shortly after Jorgensen's superiors became aware of the falsification of the payroll sheets, they reported the wrongdoing to the Inspector General[6] in accordance with a directive from the United States Office of Management and Budget. The Inspector General's office conducted an audit of the MMEP, which was still pending at the time of the hearing.

The review examiner found that Jorgensen's discharge "was due solely to deliberate misconduct in wilful disregard of employing unit interests within the meaning of Section 25 (e) (2)." The review examiner stated that, while Jorgensen contended that "her only motivation was to circumvent budgetary restrictions and keep the program going," she, as "a member of senior management . . . was aware of employer procedures, [and] . . . had only shortly been told that no one had the right to commit program funds for wages[,] equipment[,] or [proposals] without the express [] permission of upper management." He found that as "a member of senior management . . . she was aware of the employing unit's method of operations and its goals." He also found that "on her own the claimant deliberately violated these instructions for her own convenience," and stated that "[s]he could give no reason for her failure to submit a proposal to have the services placed on the master budget other than [that] she was about to go on a prepaid vacation and did not have the time."

We are of the opinion that the review examiner's findings and conclusion are supported by substantial evidence in the record. The record indicates that Jorgensen held the position of project coordinator for six and one-half years and that, as such, she was a member of "senior management." It was her responsibility to verify the accuracy of the payroll register. In her testimony, Jorgensen admitted that she had authorized Babize to approve the payment of wages for work not yet performed, and she did not dispute that this involved a falsification of payroll records. The State director of MMEP, in the discharge letter which he sent to Jorgensen, stated that the

---

[6] MMEP is a Federal grant recipient. Its records are subject to audit by the Office of the Inspector General of the United States Department of Education.

reason for her discharge was the "act of authorizing and approving the falsification of payroll documentation so as to permit the claiming of credit and receipt of wages for work not done." The MMEP program coordinator testified that Jorgensen was terminated because she "had broken a basic Fiscal rule that is a well-known principle that . . . public documents . . . dealing with public funds have to be accurate and correct."

"The apparent purpose of § 25 (*e*) (2) . . . is to deny benefits to a claimant who has brought about [her] own unemployment through intentional disregard of standards of behavior which [her] employer has a right to expect." *Garfield* v. *Director of the Div. of Employment Sec.*, 377 Mass. 94, 97 (1979). For a claimant to be denied benefits under G. L. c. 151A, § 25 (*e*) (2), he or she must have perpetrated an act of "deliberate misconduct," *and* this act must have been in "wilful disregard" of the employing unit's interest. *DiNatale* v. *Director of the Div. of Employment Sec.*, 393 Mass. 655, 657 (1985). *Torres* v. *Director of the Div. of Employment Sec.*, 387 Mass. 776, 779 (1982). *Goodridge* v. *Director of the Div. of Employment Sec.*, 375 Mass. 434, 436 (1978). As we frequently have stated, "the critical issue in determining whether disqualification is warranted is the claimant's state of mind in performing the acts that cause [her] discharge." *Garfield, supra.* See, e.g., *Director of the Div. of Employment Sec.* v. *Mattapoisett*, 392 Mass. 858, 863 (1984); *DiNatale, supra*; and *Torres, supra.*

There is no question that in directing the falsification of payroll records Jorgensen perpetrated an act of deliberate misconduct. She claims, however, that she did not do so in "wilful disregard of the employing unit's interest." Jorgensen testified that her only motivation was to "get the educational plans in motion for the children we were serving." Assuming this motivation to save the program from the possibly drastic effects of the large budget cut to be commendable, the review examiner's finding that she acted in wilful disregard of the employing unit's interest remains legally correct. As he found, she was an experienced senior manager of the program, and she was aware of the program's procedures, methods, and goals. Thus, the review examiner could infer that she knew the jeopardy

into which she threw the federally-funded program by directing the falsification of payroll records. Clearly, MMEP has a reasonable interest in maintaining accurate payroll records to comply with Federal law, if for no other reason than to ensure its survival as a federally-funded program. See *Garfield, supra* (discussing the factor of the reasonableness of the employer's expectation). The seniority of her position, her years of experience, her demonstrated competence, and the obviousness of the potential danger into which she placed the program by her act of deliberate misconduct — provide substantial evidence for the review examiner's finding that her state of mind was such that she acted in wilful disregard of the employing unit's interest.[7] There is no basis for her claim that, at worst, she suffered "a good faith lapse in judgment." *Garfield, supra.* Rather, the evidence supports the finding that hers was an act of deliberate misconduct in wilful disregard of the employing unit's interest. She was properly disqualified from receiving unemployment compensation benefits under G. L. c. 151A, § 25 (*e*) (2).[8]

The judgment of the District Court is reversed. Judgment is to be entered in favor of the director of the Division of Employment Security.

*So ordered.*

---

[7] In essence, the review examiner found that she was aware of the prohibition against falsification of records. He also found that she violated the edict given at the meetings on September 9 and 10, 1982, prohibiting the commitment of fiscal year 1983 funds without prior approval. We consider it unnecessary to address his findings regarding her not having sought approval for the additional commitment because to do so was inconvenient in light of her prepaid vacation plans.

[8] Jorgensen argues that the judgment of the District Court judge should be upheld even if the decision of the review examiner is supported by substantial evidence, on the basis that the examiner failed to make findings on two issues of material fact: the issue of Jorgensen's state of mind and the issue of gender discrimination. See *Manias* v. *Director of the Div. of Employment Sec.*, 388 Mass. 201, 204-206 (1983). As discussed in the text, the findings with respect to her state of mind were adequate. No finding was required on the issue of gender discrimination because, although the issue was raised at the hearing through questions by Jorgensen's counsel, no evidence was submitted to support the claim.