ANNIE K. STILL *vs.* COMMISSIONER OF THE DEPARTMENT
OF EMPLOYMENT AND TRAINING.

No. 94-P-339.

Hampden. April 18, 1995. - December 6, 1995.

Present: PORADA, IRELAND, & LAURENCE, JJ.

Further appellate review granted, 422 Mass. 1102 (1996).

*Employment Security*, Eligibility for benefits, Misconduct by employee.
*Statute*, Construction. *Words*, "Knowing violation."

Discussion of principles applicable to a consideration whether an employee
should be disqualified from receiving unemployment compensation ben-
efits on account of "deliberate misconduct in wilful disregard of the
employing unit's interest," under G. L. c. 151A, § 25 (*e*) (2). [507-508]
Discussion of the term "knowing violation" (of an employer's rule or pol-
icy), as appearing in G. L. c. 151A, § 25 (*e*) (2), as amended by St.
1992, c. 26, § 19, which is a ground for disqualification from receiving
unemployment compensation benefits. [508-510]
This court concluded that, to establish an employee's "knowing violation"
of an employer's policy or rule such as would disqualify the employee
from receiving unemployment compensation benefits pursuant to G. L.
c. 151A, § 25 (*e*) (2), as amended by St. 1992, c. 26, § 19, the em-
ployer must demonstrate that the employee's conduct was intentional,
that is, that the employee is conscious of his or her conduct and is
aware at the time that the conduct is in violation of a rule or policy:
involuntary, accidental, or inadvertent conduct cannot constitute a
"knowing violation." [510-511]
An employee's claim for unemployment benefits was wrongly denied fol-
lowing her discharge, after four years' employment with an unblem-
ished record as a nurse's aide, for swearing at a nursing home resident
in violation of the facility's patient care policies and rules for employee
conduct, in circumstances where the employee was fatigued, under
stress, and her spontaneous outburst was provoked by the resident's vi-
cious insult and as such her impulsive emotional reaction did not consti-
tute an intentional, "knowing violation" as would, as matter of law,
disqualify her under G. L. c. 151A, § 25 (*e*) (2), as amended by St.
1992, c. 26, § 19, from receiving unemployment benefits. [511-513]

CIVIL ACTION commenced in the Springfield Division of
the District Court Department on May 24, 1993.

The case was heard by *Nancy Dusek-Gomez*, J.

*Peter Benjamin* for the plaintiff.

*Macy Lee*, Assistant Attorney General, for the defendant.

LAURENCE, J. In January, 1993, Annie K. Still was a nurse's aide at the Heritage Hall South Nursing Home in Agawam when she was fired for violating a nursing home policy by cursing a splenetic patient who had insulted her. She filed a claim for unemployment compensation benefits with the Department of Employment and Training (DET). After a hearing, a DET review examiner determined that she was disqualified from receiving any benefits because, the review examiner concluded, her conduct, while not "deliberate," nonetheless constituted a "knowing violation of a reasonable and uniformly enforced rule or policy of the employer."[1] The DET board of review adopted the review examiner's findings and conclusion denying Still benefits as its final decision. A judge of the Springfield District Court affirmed the board's decision on Still's action for review pursuant to G. L. c. 151A, § 42. This appeal followed.

The parties propound differing interpretations of the statutory words "knowing violation,"[2] which is the sole issue in controversy. Still contends that an employee cannot be deemed in "knowing violation" of an employer's rule or policy[3] unless the offending conduct is found to have been inten-

---

[1] General Laws c. 151A, § 25(*e*)(2), as amended by St. 1992, c. 26, § 19, provides, in pertinent part, that no unemployment benefits shall be paid to any individual if he or she has "left work . . . by discharge shown to the satisfaction of the commissioner [of DET] by substantial and credible evidence to be attributable to deliberate misconduct in wilful disregard of the employing unit's interest, or to a knowing violation of a reasonable and uniformly enforced rule or policy of the employer, provided that such violation is not shown to be as a result of the employee's incompetence. . . ."

[2] The statute provides no definition of the term "knowing violation," and no relevant legislative history has been cited by the parties. There appear to be no decisions construing the 1992 amendment to G. L. c. 151A, § 25(*e*)(2).

[3] In addition to her view of the proper construction of "knowing violation," Still argues that the nursing home rule involved, while "reasonable" on its face, was not reasonable as applied to her. She contends that it is unreasonable to fire an employee with a spotless personnel record for a single incident, particularly one resulting from stress and provocation.

tional, i.e., the employee not only must be aware of the existence of the rule or policy but must also be aware at the time she acted that she was violating it. DET submits that the employee's intent is irrelevant; all that is necessary for disqualification is, as the review examiner found here, that the employee had been informed of the existence of the policy and that its violation could result in discharge. We adopt Still's construction of § 25(e) (2) and reverse the decision of the District Court judge upholding the board's decision.[4] The review examiner committed error of law, see G. L. c. 30A, § 14(7) (c); G. L. c. 151A, § 42, because, on the facts as found and under applicable legal principles, Still was not, when she uttered the offending words, sufficiently aware of her act or of its culpable character to be considered in "knowing violation."

The pertinent facts, based upon the review examiner's findings and uncontroverted testimony credited by the review examiner, are not in dispute.[5] Still, an African-American woman, was employed as a senior nurse's aide at the

---

However plausible this point might be in a proper context, we do not address it. It was not raised below. See *Royal Indem. Co.* v. *Blakely,* 372 Mass. 86, 87-88 (1977); *M.H. Gordon & Son* v. *Alcoholic Beverages Control Commn.,* 386 Mass. 64, 67 (1982), and cases cited; *Shapiro* v. *Grinspoon,* 27 Mass. App. Ct. 596, 601 (1989). It also suffers from the twin defects of generalized conclusory assertions, rather than reasoned analytical argument, and of total lack of citation to any relevant legal authorities. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Lolos* v. *Berlin,* 338 Mass. 10, 13-14 (1958); *McCone* v. *New England Tel. & Tel. Co.,* 393 Mass. 231, 236 (1984).

[4]We note, however, that we are not persuaded by Still's argument that an Indiana unemployment compensation statute, from which the amended § 25(e)(2) was allegedly "borrowed," establishes the nature of the intent requirement for a disqualifying "knowing violation." Although Indiana courts have construed the words "knowing violation" to mean deliberate and intentional violation of an employer's rules, the Indiana statute is not comparable to § 25(e)(2) because it contains no separate disqualification provision for "deliberate misconduct," and all of the enumerated causes for disqualification are species of deliberate conduct. See *Moore* v. *Review Bd. of Ind. Employment Sec. Div.,* 444 N.E.2d 910, 911-912 (Ind. Ct. App. 1983).

[5]Because the board adopted the findings of the review examiner, we consider the review examiner's findings to be the findings of the board. See *Torres* v. *Director of the Div. of Employment Sec.,* 387 Mass. 776, 777

Agawam nursing home from January, 1989, to January 12, 1993. The nursing home's employee handbook, a copy of which Still was given at the time of employment, set forth the facility's patient care policies and the rules for employee conduct. The handbook stressed that patients were "at all times [to] be treated with consideration [and] respect" so as to allow them "to retain their dignity and self-respect." Patients were to be free from "mental and physical abuse" (neither of which term was defined). Employees were warned that "negligence and inconsiderate treatment" of patients "may result in . . . termination"; while "rude, discourteous or uncivil behavior" or "fighting" with anyone at the facility "may result in disciplinary action and/or termination." Still received early in-house instruction and education regarding these rules and avoidance of their violation (including sessions on "How to handle a combative patient" and "Dealing with the demanding resident"). She was aware that employees had been discharged for unspecified "patient abuse."

Prior to her discharge on January 12, 1993, Still had enjoyed an unblemished record of service, and no disciplinary actions or warnings had ever been lodged against her. Her problems began on the morning of January 9, 1993, while she was working a double shift because the facility was short staffed. One of the residents she was caring for was an irascible elderly man who regularly uttered abusive, racially offensive remarks. That morning the patient made particularly rude remarks to Still. She had earlier been instructed "just to walk away if he got to her." Still was so upset by the choleric comments uttered on January 9, 1993, that she arranged to be relieved from working with the fractious resident at all.

Later that day, however, well into her tenth straight hour of work, Still had to attend to the roommate of the snappish resident. While she was doing so behind a partially drawn curtain, the resident called her "a fat lazy black bitch." Instead of ignoring the comment, Still was, the review exam-

(1982); *Jones* v. *Director of the Div. of Employment Sec.*, 392 Mass. 148, 149 (1984).

iner found, immediately "provoked" into a loud "outburst," consisting of the words "mother fucker."[6] She continued caring for the roommate without further comment. Still's outburst was reported by a fellow employee to her employer, who investigated the incident (without confronting Still) and determined that Still had verbally abused the patient "after being provoked." She was discharged as of January 12, 1993, for "swearing at a resident."

The review examiner found that the employer's policy against "patient abuse" had, to Still's knowledge, been uniformly enforced by terminating all employees "involved" in such conduct. (No factual details were presented as to the nature of the previously punished "abuse" or of the "involvement" of the penalized employees.) The review examiner accepted Still's testimony that her outburst "was not done with forethought." Consequently, he concluded that it could "not be considered to have been deliberate." Further, he agreed (as did the employer) that Still's reaction "was provoked by the patient."

Nonetheless, the review examiner determined that by her conduct Still had "knowingly violated" the employer's reasonable and uniformly enforced rule. He particularly emphasized as the basis for his determination the fact that Still "knew of the rule or policy by having been issued a copy of them [*sic*] and having been instructed regarding them and avoidance of violations thereof." In so concluding, the review examiner acquiesced in the employer's position that, if it is found that an employee with the prior knowledge and information attributable to Still violates a patient's rights, the employee is to be penalized with maximum severity even if the conduct constituting the violation was "an involuntary act."

---

[6]Still's testimony, as to her state of mind at the time of the incident, which DET concedes was credible and accepted by the review examiner, was: "[B]y this time, I had had it because I'd had a rough day, and I just said what I said, not thinking, and it wasn't intentionally. I didn't go down there with the intent of swearing at [the patient] . . . it just came out. . . . I said what I said before I even realized what I'd said. . . . It was all said in one breath. . . . I know there's a policy, but I wasn't thinking about it at that time."

We agree with Still that the 1992 amendment to § 25(*e*) (2) was not intended to deny benefits in such a situation. Prior to the amendment, the only ground for disqualification from receiving unemployment compensation benefits (other than by voluntary leave or on account of incompetence) was for "deliberate misconduct in wilful disregard of the employing unit's interest." Several paramount principles emerge from the authorities that have applied this provision. First, it is construed in light of "[t]he purpose of unemployment compensation . . . to provide compensation for those who are thrown out of work through no fault of their own." *Leone* v. *Director of the Div. of Employment Sec.*, 397 Mass. 728, 733 (1986). Second, "the critical issue in determining whether disqualification [from receiving unemployment benefits] is warranted is the claimant's state of mind in performing the acts that cause his discharge." *Garfield* v. *Director of the Div. of Employment Sec.*, 377 Mass. 94, 97 (1979).

Third, in making the critical determination regarding the employee's state of mind, the review examiner "must . . . take into account . . . the presence of any mitigating factors," *ibid.*, including disease, such as alcoholism, *Shepherd* v. *Director of the Div. of Employment Sec.*, 399 Mass. 737, 740 (1987), as well as stress, "serious personal problems" or other factors "causing an employee to be unusually fatigued at a particular period." *Wedgewood* v. *Director of the Div. of Employment Sec.*, 25 Mass. App. Ct. 30, 31-33 (1987). Because of the critical nature of the employee's state of mind and surrounding mitigating circumstances, mere violation of an employer's rule does not "automatically justif[y] a disqualification from unemployment benefits, the general principle being that '[w]hile the violation of a work rule may well justify the discharge of an employee, such a violation does not necessarily amount to misconduct for unemployment compensation purposes.'" *Torres* v. *Director of the Div. of Employment Sec.*, 387 Mass. 776, 780 n.3 (1982), quoting from *Smith* v. *Director of the Div. of Employment Sec.*, 376 Mass. 563, 566-567 (1978).

Fourth, in the absence of sufficient specific, subsidiary findings on the issue of the claimant's state of mind, see *Lycurgus* v. *Director of the Div. of Employment Sec.*, 391 Mass. 623, 626-627 (1984); *Starks* v. *Director of the Div. of Employment Sec.*, 391 Mass. 640, 641 (1984); *Coulouras* v. *Director of the Div. of Employment Sec.*, 394 Mass. 817, 820 (1985), which findings are supported by substantial evidence, *Goodridge* v. *Director of the Div. of Employment Sec.*, 375 Mass. 434, 436 (1978), an agency decision disqualifying the claimant "cannot stand." *Torres* v. *Director of the Div. of Employment Sec.*, 387 Mass. at 779. Fifth, the employer has the burden of proving all of the facts required to establish disqualification. *Cantres* v. *Director of the Div. of Employment Sec.*, 396 Mass. 226, 231 (1985). Finally, the entire compensation scheme must be "construed liberally" in favor of the employee, given the overriding purpose of c. 151A "to lighten the burden which . . . falls on the unemployed worker and his family." G. L. c. 151A, § 74. *Garfield* v. *Director of the Div. of Employment Sec.*, 377 Mass. at 96.

No legislative history appears to illumine the General Court's intent in amending § 25(*e*) (2) to make discharge for "knowing violation" of an employment rule or policy a ground for benefit disqualification in addition to discharge for "deliberate misconduct in wilful violation" of the employer's interest. It seems evident that the intent was at least in part to restrict the availability of unemployment compensation benefits in cases of discharges for cause. That intent can be seen in the deletion of the word "solely" from the former phrase modifying "discharge" — "attributable solely to deliberate misconduct in wilful disregard of" the employer's interest. It may also be reflected in the fact that a "knowing violation" of a work rule must mean something different than "deliberate misconduct in wilful disregard" of the employer's interest. See *Chatham Corp.* v. *State Tax Commn.*, 362 Mass. 216, 219 (1972) ("every word of a legislative enactment is to be given force and effect"); *Commonwealth* v. *Gove*, 366 Mass. 351, 354 (1974) ("[n]o portion of the statutory language may be deemed superfluous"). That

something would appear to involve, at the very least, a some-what lesser burden of proof on the employer, since even if "knowing" were construed to be synonymous with "deliberate" (see Webster's Third New Intl. Dictionary 1252 [1968] ["knowing . . . [t]hat [which] is done with . . . deliberateness"]), proof of the new disqualification does not require proof of the additional elements of "wilful disregard" or adverse effect on the employer's interests.

There is, however, nothing in the 1992 amendments to suggest, and no reason to suppose, that the Legislature intended to change or make inapplicable any of the basic analytical principles set forth above. See *Ferullo's Case*, 331 Mass. 635, 637 (1954); *Cousineau* v. *Laramee*, 388 Mass. 859, 862 (1983). This seems particularly true given the continued applicability of the rule of liberal construction, see G. L. c. 151A, § 74, as well as the legislative use of a modifier, "knowing," that mandates investigation of the employee's thought process and state of mind at the time of the violative conduct.[7] See *Shepherd* v. *Director of the Div. of Employment Sec.*, 399 Mass. at 739 ("[i]n making findings regarding the employee's state of mind, the review examiner must 'take into account the worker's knowledge . . . ' "). See also *Goodridge* v. *Director of the Div. of Employment Sec.*, 375 Mass. at 436; *Torres* v. *Director of the Div. of Employment Sec.*, 387 Mass. at 781; *Starks* v. *Director of the Div. of Employment Sec.*, 391 Mass. at 643; *Quintal* v. *Commissioner of the Dept. of Employment & Training*, 418 Mass.

---

[7]"Knowing," when used to modify conduct in a statute, is a word without a single fixed or uniform meaning; its meaning in a particular case will vary depending on the context in which it is used or the character of the conduct at issue. See *State* v. *Contreras*, 105 R.I. 523, 536-537 (1969). That meaning may range from connoting "an evil state of mind," *Morissette* v. *United States*, 342 U.S. 246, 264 (1952), or "callous and intentional violations of the law," *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 627 (1978), merely to being aware of the act one is performing, regardless of purpose or legal understanding. *Commonwealth* v. *McKnight*, 283 Mass. 35, 39-40 (1933); *Scola* v. *Scola*, 318 Mass. 1, 7 (1945). All of its various meanings, however, necessarily implicate the actor's mental state with reference to the conduct.

855, 860 (1994); *Computer Sys. Engr., Inc.* v. *Qantel Corp.*, 571 F. Supp. 1365, 1373-1377 (D. Mass. 1983).

The key question, as Judge Keeton so aptly put it in *Qantel*, is: Assuming that the term "knowing" refers to a state of mind existing at the time of the relevant activity, "what is it that [the employer] must prove that [the employee] knew when acting, in order to establish a 'knowing violation?.'" *Id.* at 1374. Giving the word "knowing," or its adverbial functional equivalent, "knowingly," its usual and ordinary meaning, see *Naples* v. *Commissioner of the Dept. of Employment & Training*, 412 Mass. 631, 633, 634 (1992), we hold that what must be proved at an irreducible minimum is intentionality in the form of (a) consciousness on the part of the employee of what it is she is doing and (b) awareness that she is in the process of violating a rule or policy of the employer. The dictionary definitions and decisional precedent agree in according "knowing" that basic intentional, cognitive content. It cannot apply, as contended by the employer and determined by the review examiner, to conduct that is unintentional by virtue of being involuntary, accidental, or inadvertent.[8]

---

[8]See Webster's Third New Intl. Dictionary 1252 (1968) ("knowing . . . having or reflecting knowledge, information, or insight . . . done with awareness"; "knowingly . . . in a knowing manner, . . . with awareness"); Black's Law Dictionary 872 (6th ed. 1990) ("knowingly . . . with knowledge, consciously. . . . Act is done 'knowingly' . . . if it is willed, is the product of conscious design . . . and is done with awareness"); *Commonwealth* v. *McKnight*, 283 Mass. at 39 ("[t]he statutory word [knowingly] 'imports a perception of the facts. . . .'"); *Commonwealth* v. *Jones*, 403 Mass. 279, 287 (1988) (waiver of right to conflict-free counsel is done "knowingly" if defendant has demonstrated "his understanding of the circumstances"); *Commonwealth* v. *Dane Entertainment Servs., Inc.*, 23 Mass. App. Ct. 1017, 1018 (1987) ("knowing" violation of obscenity statute required proof of "a general awareness" of the character of the materials); *VMark Software, Inc.* v. *EMC Corp.*, 37 Mass. App. Ct. 610, 621, 623-624 (1994) (multiple damages for a "knowing" c. 93A violation requires "sufficient awareness of the facts" plus an element of inequitable behavior); *United States* v. *Reilly*, 827 F. Supp. 1076, 1077-1078 (D. Del. 1993) ("knowing violation" of the statute against ocean dumping requires that "the acts constituting the offense be done consciously"). Cf. *United States* v. *United States Gypsum Co.*, 438 U.S. 422, 435-437, 443-446 (1978) (acting knowingly, in the sense of being aware of the action one is

Such is, in fact, the interpretation of "knowing violation" that the Commissioner of DET recognizes. Adopting the construction utilized by the Palmer District Court in the case of a worker who fell asleep at the job because of bad air quality (Carliell *vs*. Commissioner of the Dept. of Employment & Training, No. 9343 CV0062 [March 31, 1994], relied upon by Still in her brief), the commissioner has stated that:

> "[A]n employee must be aware of his conduct in violating a [workplace] rule. . . . [T]he employee's conduct did not constitute a 'knowing' violation of a workplace rule, for the simple reason that an unconscious person is not in a position to be aware of his actions. . . . [I]n order for a rule violation to be considered 'knowing', the employee must be found to have been 'aware that he or she was engaging in the conduct that violated the rule.' "[9]

Although Still was not unconscious, the review examiner's findings, based upon Still's unrebutted testimony, reveal that her conduct — an "outburst" "provoked" by a vicious insult and made while fatigued and without "forethought" or delib-

---

taking, of its circumstances, and of its probable consequences, is sufficient to establish the intent required to establish an antitrust violation under 15 U.S.C. § 1); Model Penal Code § 2.02(2)(b) and comment 2 (1985); Restatement (Second) of Torts §§ 8A, 13, 16, 18, 20, 290 (1965); Williams, The Mental Element in Crime 20 (1965) ("Intention is a state of mind consisting of knowledge of any requisite circumstances plus desire that any requisite result shall follow from one's conduct, or else of foresight that the result will certainly follow").

[9]The commissioner's position was set forth in a September 9, 1994, letter to Senator Robert D. Wetmore, informing him of the adoption of this view of the term "knowing violation" by the special Business-Labor Advisory Group on Workplace Rule Violations created by St. 1993, c. 263, § 18. The letter was supplied by Still, without objection, as a supplemental authority, pursuant to Mass.R.A.P. 16(l), as amended, 386 Mass. 1247 (1982). The letter states that this construction of "knowing violation" has been incorporated into the department's unemployment insurance policy handbook. Although the ultimate responsibility for interpreting the applicable statute lies with the courts, *Johnson* v. *Martignetti*, 374 Mass. 784, 790 (1978), we "accord due weight and deference to an agency's reasonable interpretation of a statute within its charge." *Boston Neighborhood Taxi Assn.* v. *Department of Pub. Util.*, 410 Mass. 686, 692 (1991).

eration — was in the nature of a spontaneous, emotional re-
action rather than culpable conscious action performed with
an awareness of its character, circumstances and conse-
quences. Cf. *Garfield* v. *Director of the Div. of Employment
Sec.*, 377 Mass. at 97 ("good faith lapse in judgment or at-
tention" does not constitute the sort of "intentional disregard
of standards of behavior which [the] employer has a right to
expect" that results in disqualification); *Torres* v. *Director of
the Div. of Employment Sec.*, 387 Mass. at 779, 781 (use of
a vulgar, insulting epithet by employee to his superior might
or might not be a disqualifying act of misconduct depending
on the employee's state of mind at the time of the deed, in-
cluding his "knowledge . . . and the presence of any mitigat-
ing factors"); *Wedgewood* v. *Director of the Div. of Employ-
ment Sec.*, 25 Mass. App. Ct. at 33 (falling asleep might
constitute disqualifying misconduct unless brought on by
stress and fatigue from personal problems or other mitigating
circumstances depriving the act of a voluntary quality).

The examiner's findings as to the extent of Still's knowl-
edge (i.e., a prior awareness of the existence of the rules
against "rudeness" and "mental abuse" toward patients and
of the potential consequences of any violation) and the evi-
dence as to the impulsive, provoked character of Still's re-
sponse while fatigued and under stress do not support the
conclusion that Still should be denied unemployment bene-
fits. In conjunction with the acknowledged mitigating cir-
cumstances, the principles enunciated in decisional law, and
the "liberal construction" mandate of G. L. c. 151A, § 74,
they rather establish that Still's conduct did not, as matter of
law, constitute a "knowing violation" of a work rule.

Requiring the modicum of intent consisting of conscious
awareness as an element of a "knowing violation" under
§ 25(*e*) (2) does not create a merging or blurring of the two
misconduct situations that disqualify a discharged employee
from unemployment benefits. "Deliberate" and "wilful,"
while also denoting intentional conduct, have meanings dis-
tinct from "knowing" which connote more purposeful and
wrongful action or inaction on the part of the employee.

See *Garfield* v. *Director of the Div. of Employment Sec.*, 377 Mass. at 97. In that respect, the original provision of the statute presents an employer with a more difficult burden of proof; on the other hand, it covers a broader spectrum of employee conduct, not being confined to breaches of an established rule or policy. The distinction, in a nutshell, is between an employee's willing that a particular act and result take place and her merely being willing that it does take place.

We therefore vacate the judgment. A new judgment shall be entered in the Springfield District Court remanding the proceeding to DET for entry of a decision in accordance with this opinion.

*So ordered.*