25 Mass. App. Ct. 30 (1987)
514 N.E.2d 680
JERRY A. WEDGEWOOD
vs.
DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY & another.[1]
No. 86-1366.
Appeals Court of Massachusetts, Suffolk.
October 20, 1987.
November 3, 1987.
Present: DREBEN, KASS, & FINE, JJ.
John F. Palmer for the employee.
Wendy Thaxter, Assistant Attorney General, for the Director of the Division of Employment Security.
FINE, J.
Jerry A. Wedgewood was employed for fifteen years as a maintenance worker by Boston College. He worked the night shift. On March 22, 1985, he was discharged from his employment for falling asleep while on duty. He had previously been found asleep on the job and had been warned that if it happened again he would be discharged. Although he had been having personal problems which caused him to be short of sleep, he had declined the offer of a leave of absence, and he avoided discussing the specifics of his personal problems with his supervisor.
*31 Wedgewood filed a claim for unemployment compensation benefits under G.L.c. 151A, § 22, which was denied first, after a hearing, by the Division of Employment Security review examiner and then by the division's board of review (board). He sought judicial review under G.L.c. 151A, § 42, in the Boston Municipal Court. This appeal is from a decision of a judge of that court affirming the decision of the board denying benefits.
We accept the facts found by the board. We think, however, they compel the opposite conclusion from that reached by the board and by the judge. We reverse the decision, therefore, and order the case remanded to the Boston Municipal Court so that it may be remanded, in turn, to the Division of Employment Security for entry of an order awarding Wedgewood unemployment compensation benefits in accordance with this opinion. See Jones v. Director of the Div. of Employment Security, 392 Mass. 148, 151 (1984).
The hearing examiner, in a decision adopted by the board, found that: "[t]he claimant was discharged for sleeping on the job, after being warned that such performance placed his job in jeopardy and would subject him to discharge; ... the claimant made no effort to reveal his reason for sleeping while at work; ... he was aware that he faced discharge at the next incident; ... he considered his reasons for his actions too personal to discuss with the employer; ... the claimant, although suspended from work in the midst of his personal problems, instituted no job action with his Union." In addition, there was uncontested testimony offered through the employer's witness that Wedgewood had been a stable employee of Boston College for fifteen years and had never fallen asleep on the job prior to the incidents leading to his termination, which occurred over a period of about one month. Wedgewood testified, and the hearing officer found, that, at the time of those incidents, Wedgewood was experiencing personal problems which consisted, among other things, of a pending divorce and the very serious illnesses of both of his elderly parents with whom he was living and for whose care he was responsible. His seventy-eight year old mother was in a hospital intensive *32 care unit suffering from pneumonia and his eighty year old father was at home terminally ill with cancer. He alternately visited his mother in the hospital and cared for his father at home. Wedgewood gave testimony, and there is no indication the hearing officer disbelieved it, that, as a result of the family problems, he did not have sufficient time to sleep during the day. On the night he was fired, according to testimony offered by the employer, Wedgewood's supervisor found him seated at a desk, asleep, in a four by eight foot custodial closet or locker room. The door was open. No evidence was presented concerning how many breaks he was allowed during the night or when they were in relation to when he was found asleep.
On the basis of its review, the board denied benefits, concluding that "the claimant was in full control of his actions and failed to protect his employment status when he knew he faced discharge, and therefore his separation was due solely to deliberate misconduct in wilful disregard of the employer's interest within the meaning of [G.L.c. 151A, § 25(e)(2)]." That provision, as appearing in St. 1973, c. 899, § 2, states that no benefits are payable to an individual for a "discharge shown to the satisfaction of the director to be attributable solely to deliberate misconduct in wilful disregard of the employing unit's interest."
The employer bears the burden of persuading the fact finder of the employee's wilful misconduct. See Cantres v. Director of the Div. of Employment Security, 396 Mass. 226, 231 (1985); Shepherd v. Director of the Div. of Employment Security, 399 Mass. 737, 740 (1987). "The critical factual issue in determining whether an employee's discharge resulted from his wilful or intentional misconduct is the employee's state of mind at the time of his misconduct." Torres v. Director of the Div. of Employment Security, 387 Mass. 776, 779 (1982) (citation omitted). See also Jean v. Director of the Div. of Employment Security, 391 Mass. 206, 209 (1984). In making that factual determination, the board must consider the presence of any mitigating factors. Garfield v. Director of the Div. of Employment Security, 377 Mass. 94, 97 (1979). Shepherd v. Director of the Div. of Employment Security, 399 Mass. at 739.
*33 Although the act of falling asleep, by its very nature, ordinarily has an unintentional aspect to it, we acknowledge that sleeping on the job may constitute such misconduct in wilful disregard of an employer's interest as to justify the denial of unemployment compensation benefits. However, each such case must be examined individually in light of any mitigating circumstances. Contrast Pilgrim Manor Nursing Home v. Gerace, 337 So.2d 660, 662 (La. App. 1976), in which there were mitigating circumstances and benefits were allowed, with Grant v. District of Columbia Dept. of Employment Serv., 490 A.2d 1115 (D.C. 1985), Bell v. Michigan Employment Security Commn., 359 Mich. 649 (1960), and Auger v. Gillette Co., 303 N.W.2d 255 (Minn. 1981), in which no mitigating circumstances were identified and benefits were denied. In a somewhat analogous context, the Supreme Judicial Court has stated that misconduct, including excessive absenteeism and lateness, would not disqualify a discharged employee from receiving benefits if the misconduct is attributable to the disease of alcoholism. See Shepherd v. Director of the Div. of Employment Security, 399 Mass. at 739. Similarly, in our view, serious personal problems causing an employee to be unusually fatigued at a particular period in his life may constitute such substantial and relevant mitigating factors as to prevent his sleeping on the job from being considered deliberate misconduct in wilful disregard of his employer's interest. In light of the mitigating circumstances affecting Wedgewood, a satisfactory employee for fifteen years, the fact that he fell asleep on the job on a few occasions was not a sufficient basis for denying him benefits.
There is another aspect to the board's decision. It found that "the claimant was in full control of his actions and failed to protect his employment status when he knew he faced discharge." The reference was to Wedgewood's unwillingness to discuss his personal problems with his supervisor, to take a leave of absence, to accept counselling, or to institute a union complaint. We need not decide whether these failures on Wedgewood's part would have been a sufficient basis for his dismissal. In any event, in the circumstances, we do not regard *34 his perhaps excessive concern for privacy, his unwillingness to accept help from his employer or union, or his unwillingness to take a leave of absence, as a sufficient basis for denial of unemployment compensation benefits. He had an understandable reason for not wanting to take a leave of absence: his need to comply with a court order requiring him to pay support for his three minor children. Compare Guarino v. Director of the Div. of Employment Security, 393 Mass. 89, 94 (1984). It is odd to suggest that Wedgewood's failure to file a union complaint was a wilful action in violation of the employer's interest since the complaint would have been one the employer would have had to defend. It is true that Wedgewood's reluctance to discuss his personal problems with his supervisor or to accept help from his employer or the union probably did not serve his own long range interests. For purposes of G.L.c. 151A, § 25(e)(2), however, that reluctance did not constitute deliberate misconduct in wilful disregard of his employer's interest.
The judgment is reversed. Judgment shall be entered in the Boston Municipal Court remanding the proceeding to the Division of Employment Security for entry of an order in accordance with this opinion.
So ordered.
NOTES
[1] Trustees of Boston College.