SHRIVER NURSING SERVICES, INC. *vs.* COMMISSIONER OF THE
DIVISION OF UNEMPLOYMENT ASSISTANCE & another.[1]

No. 11-P-493.

Worcester. November 9, 2011. - August 27, 2012.

Present: GREEN, SIKORA, & WOLOHOJIAN, JJ.

*Employment Security,* Eligibility for benefits, Misconduct by employee. *Words,*
"Knowing violation."

The Division of Unemployment Assistance board of review erred in affirming
a review examiner's determination that the employee, a nurse who fell
asleep during her shift, was eligible to receive benefits, where the alleged
condonation of the sleeping by the employer's customer was immaterial,
and where a circumstantial evaluation of the sleeping lapse required
disqualification as a *knowing violation of the employer's* rule or policy.
[370-375] GREEN, J., dissenting.

CIVIL ACTION commenced in the Westborough Division of the
District Court Department on June 25, 2010.

The case was heard by *Paul S. Waickowski,* J.

*John Foskett* for the employer.

*Douglas S. Martland,* Assistant Attorney General, for Com-
missioner of the Division of Unemployment Assistance.

SIKORA, J. Shriver Nursing Services, Inc. (Shriver), employs
and places professional nurses in the homes of patients for the
delivery of skilled care. From June of 2003 to March of 2009,
Shriver employed Renne Milinazzo, a licensed practical nurse.
It then terminated her. She applied to the Division of Unemploy-
ment Assistance (DUA) for benefits. G. L. c. 151A, §§ 22, 23,
24. Shriver opposed the application. At the conclusion of the
DUA's adjudicatory process, its board of review (board) awarded
her benefits. Shriver appealed to the District Court. G. L.
c. 151A, § 42. A judge of that court entered judgment on the

_____
[1]Renne Milinazzo.

pleadings in favor of the DUA and Milinazzo. See Mass.R.Civ.P. 12(c), 365 Mass. 754 (1974). For the following reasons we reverse and order the entry of judgment in favor of Shriver.

*Background.* 1. *Facts.* The material facts emerging from the adjudication by the DUA are undisputed. Throughout her employment with Shriver, Milinazzo worked full time as an overnight monitor for a boy with cerebral palsy. He breathed through a ventilator and required care twenty-four hours per day.[2] In 2009, the boy was eleven years old. Milinazzo's shift at his family home extended from 6:00 P.M. to 7:00 A.M. From a separate room in the house, she observed the patient by closed circuit television. If a problem arose with the ventilator equipment and the boy required assistance, such as suctioning or clearing out the breathing tube, an alarm would sound. Even before an alarm sounded, an observing nurse could detect changes in a patient's condition and the need for an intervention. Milinazzo's observation room contained a couch. To make her more comfortable during the shift, the boy's father provided her with a blanket and a pillow.[3]

Shriver's employee manual contained a list of "serious violations" exposing a worker to "immediate termination." It included "sleeping on the job." Milinazzo had read the manual and signed an acknowledgment of her understanding of its provisions on various dates, most recently on March 4, 2008. She testified that she knew that sleeping on the job would not allow her "to do [her] nursing duties and take care of the child to the best of [her] ability."

On August 11, 2008, Milinazzo fell asleep during her shift. The boy's mother learned of the incident but did not report it to Shriver. Then, on February 27, 2009, Milinazzo again fell asleep on duty. The mother again did not report the incident to Shriver at the time of its occurrence.

On March 6, 2009, Milinazzo posted a comment on a social networking Web site, creating an inference that the patient's

---

[2] As of 2009, Milinazzo had worked with the family and cared for the boy for approximately nine years. Before her term with Shriver, she had done so through two other nursing agencies.

[3] The DUA did not find that the father ever had authorized or condoned the use of the blanket and the pillow for sleeping on the job, only for her comfort in the performance of the work.

family was treating her shabbily. The mother saw the post and reported it to Shriver on March 9, 2009. At the same time she reported both sleeping incidents to Shriver.[4]

Milinazzo met with Shriver personnel to discuss the mother's complaints and admitted to the occurrences. Shriver offered her the choice of termination or resignation; she chose to resign.

Milinazzo then applied for unemployment benefits from the DUA. It first disqualified her from eligibility on the ground that she had left employment voluntarily. G. L. c. 151A, § 25(*e*)(1). She appealed. A review examiner conducted a hearing, made findings, and reversed the disqualification. The examiner found that Milinazzo had not left employment voluntarily within the meaning of § 25(*e*)(1), but rather that Shriver had coerced her resignation so as to make it involuntary, and so as to require for disqualification a fault-based ground under § 25(*e*)(2). In pertinent part, § 25(*e*)(2), as appearing in St. 1992, c. 26, § 19, disqualifies an applicant from unemployment benefits if she left her employment:

> "by discharge shown to the satisfaction of the [DUA] by substantial and credible evidence to be attributable to deliberate misconduct and wilful disregard of the employing unit's interest, or to a knowing violation of a reasonable and uniformly enforced rule or policy of the employer."

The review examiner determined that Shriver had failed to establish "deliberate misconduct which would allow it to terminate [Milinazzo's] employment and disqualify her from benefits."

Shriver next appealed to the board. After a remand to the review examiner for additional findings, the board affirmed the determination of eligibility for benefits.

In accordance with G. L. c. 151A, § 42, Shriver sought judicial review in the District Court under the standards of the Administrative Procedure Act, G. L. c. 30A, § 14(7). A judge affirmed the DUA decision without opinion or explanation. Shriver has timely appealed to this court. G. L. c. 151A, § 42.

---

[4]The mother did not remember the specific date of the second incident. Another Shriver employee, training at the patient's home with Milinazzo at the time, provided the date.

*Analysis.* 1. *Standard of review.* The fundamental purpose of the statutory program of unemployment assistance is "to afford benefits to persons who are out of work and unable to secure work through no fault of their own." *Howard Bros. Mfg.* v. *Director of the Div. of Employment Security,* 333 Mass. 244, 248 (1955). The statute calls for a liberal construction "in aid of its purpose." G. L. c. 151A, § 74, as appearing in St. 1990, c. 177, § 340. If an employer disputes the eligibility for benefits of a discharged employee, the issue is not the validity of the grounds for discharge, but rather the qualification of the former employee for assistance in the entire circumstances of the discharge. *Still* v. *Commissioner of the Dept. of Employment & Training,* 423 Mass. 805, 809 (1996). The grounds for disqualification prescribed in c. 151A, § 25(*e*)(2), constitute exceptions to eligibility; the burden of proof of either "wilful disregard of the employing unit's interest, or [of] a knowing violation of a reasonable and uniformly enforced rule or policy of the employer" rests upon the employer. *Id.* at 807-808. The statute subjects the final eligibility decision of the DUA to judicial review under the standards of the Administrative Procedure Act. G. L. c. 151A, § 42. In this instance Shriver challenges the DUA determination as an error of law, a finding unsupported by substantial evidence, and a disposition arbitrary, capricious, and abusive of discretion within the meanings of G. L. c. 30A, § 14(7)(*c*), (*e*), and (*g*), respectively.

2. *DUA reasoning.* Upon the facts undisputed by the parties, the board rejected Shriver's challenge to Milinazzo's eligibility with the following rationale.

> "Although the claimant's sleeping on the job twice clearly violated the employer's policy and expectation, we conclude that the employer's client — the child's mother — had condoned the claimant's sleeping on the job. The mother waited seven months after the first incident and an entire week after the second incident to complain to the employer. However, because the mother did not complain until she read the claimant's Facebook posting, her complaints were seemingly not motivated by the claimant's sleeping on the job. After sleeping twice on duty, the claimant still had no reason to believe that the mother would

report her misconduct, particularly when the clients had provided a pillow and blanket to accommodate the claimant. She thus lacked the requisite intent to violate the employer's policy or expectation, since her action had been condoned by the employer's client.

"We, therefore, conclude as a matter of law that the claimant quit to avoid discharge, but that her discharge would not have been for deliberate misconduct in wilful disregard of the employer's interest or for a knowing violation of the employer's reasonable and uniformly enforced policy."

On appeal the DUA defends this reasoning on the grounds (1) that we should defer to "the experience, technical competence, and specialized knowledge of the [DUA] as well as the discretionary authority conferred upon it," citing G. L. c. 30A, § 14(7); and (2) that Milinazzo did not commit a "knowing violation" of a rule or policy because she had twice fallen asleep "inadvertently."

First, no degree of deference for agency adjudication can salvage the board's condonation rationale. No provision of the statutory scheme and no decisional law supports such a notion.[5] Without the consent of the employer, the client, patient, or customer has no authority to define or to waive the standards of performance of the employment relationship. The vital interests in those standards belong exclusively here to Shriver. It never relaxed or abandoned them. If Milinazzo had slept through a clog in the ventilator breathing tube and if that malfunction had

---

[5]The observation of this court in *South Cent. Rehabilitative Resources, Inc.* v. *Commissioner of the Div. of Employment & Training*, 55 Mass. App. Ct. 180, 186 (2002), remains accurate:

"We do not know of any decision, and we have not been referred to any, that holds that an employer's actions had in some fashion condoned the employee's deliberate misconduct in wilful disregard of the employer's interest. It is the employee's state of mind that is considered, not necessarily that of the employer."

No principled distinction appears to require different treatment for the knowing violation prong of disqualification of § 25(*e*)(2). If an employer's condonation were immaterial, all the more so would be that of the client, patient, or customer of the employer.

caused death or grave harm to the patient, Shriver would have
suffered the consequences in both law (respondeat superior li-
ability) and commerce (diminished reputation and good will).
Condonation by the patient's family would not prevent the
harm to those legal and economic interests. Shriver never knew
of the mother's condonation, nor could it rationally have
consented to it. As it points out, the mother's alleged tolerance
of Milinazzo's lapses is immaterial to Shriver's interests and
treatment of its employee. This ground of decision reduces to
an error of law and a determination arbitrary, capricious, and
abusive of discretion. G. L. c. 30A, § 14(7)(*c*), (*g*).

3. *Knowing violation of rule or policy.* The DUA argues that
the board's decision rests also upon the implicit ground that
Milinazzo's sleeping incidents could not constitute knowing
violations of the prohibition against on-duty sleeping because
they were inadvertent lapses. Shriver answers that such a broad
exemption would violate statutory purpose and policy.[6]

In 1951 the Legislature inserted the "deliberate misconduct"
criterion into the disqualification provision of the unemploy-
ment assistance program. St. 1951, c. 763, § 9(*e*). In 1992 it
expanded the basis for disqualification by addition of the "know-
ing violation" ground. St. 1992, c. 26, § 19. *Still,* 423 Mass. at
811. Decisions applying the earlier deliberate misconduct standard
can provide guidance for application of the later supplemental
knowing violation test. "Knowing" requires a conscious intent
both (a) to commit some action or behavior, and thereby (b) to
violate the employer's rule or policy. *Id.* at 813. An employee
usually must be aware of both elements, the immediate and the
consequential. *Ibid.* See *Allen of Mich., Inc.* v. *Deputy Director of
the Div. of Employment & Training,* 64 Mass. App. Ct. 370, 380
(2005) (assimilating into knowing violation inquiry antecedent

---

[6]The board's decision first framed the issue before it as whether Milinazzo
"had engaged in deliberate misconduct in wilful disregard of the employer's
interest," and then concluded that her conduct comprised neither deliberate
misconduct nor a knowing violation. On appeal it characterizes the issue as a
question of knowing violation only. Although similar, those two grounds can-
not be identical because every substantive provision of a statute is effectual, not
redundant. See, e.g., *Negron* v. *Gordon,* 373 Mass. 199, 205 (1977), and cases
cited; *Sperounes* v. *Farese,* 449 Mass. 800, 807 (2007). As explained *infra,* our
analysis of on-duty sleeping in this case would bring the same result under
either standard of the disqualification clause of § 25(*e*)(2).

factors from deliberate misconduct cases such as [i] employee's knowledge of employer's expectation, [ii] reasonableness of expectation, and [iii] presence of "any mitigating factors").

In this instance Milinazzo clearly knew of Shriver's rule and policy against sleeping on duty. She conceded its importance. She had read the manual and executed a written acknowledgment of its contents. The decisive question is whether she knew that she was falling asleep on the two occasions. The DUA's position is that the inherent inadvertence of falling asleep precludes its knowing character. Both precedent and policy militate against that categorical position. Instead, they require a circumstantial evaluation of a sleeping lapse.

Our most pertinent precedent is *Wedgewood* v. *Director of the Div. of Employment Security*, 25 Mass. App. Ct. 30 (1987), a case arising under the wilful misconduct standard. In that instance, a college discharged a custodian for sleeping during his night shift after a prior similar episode had resulted in a warning. The agency denied eligibility for benefits under the wilful misconduct standard, and a trial court judge affirmed. *Wedgewood*, *supra* at 31. With citations to cases in other jurisdictions, this court adopted the following approach to termination resulting from on-the-job sleeping.

> "Although the act of falling asleep, by its very nature, ordinarily has an unintentional aspect to it, we acknowledge that sleeping on the job may constitute such misconduct in wilful disregard of an employer's interest as to justify the denial of unemployment compensation benefits. However each such case must be examined individually in light of any mitigating circumstances."

*Id.* at 33. In that instance the custodian had accrued a fifteen-year history of satisfactory performance before the two sleeping incidents and was struggling with the multiple personal burdens of a pending divorce and child support payments, personal care of two seriously ill elderly parents, and inadequate time for daily sleep. *Id.* at 31-32. He had fallen asleep as he sat at a desk in a visible area.[7] *Ibid.* Those circumstances negated the agency's determination of disqualifying deliberate misconduct. *Id.* at 33.

---

[7]Neither the *Wedgewood* case nor this one presents the situation of the premeditating and furtive napper or catnapper.

In the application of the knowing violation standard to the infraction of on-duty sleeping, we conclude similarly that the unintentional aspect of falling into sleep cannot categorically insulate an applicant from disqualification for benefits. For this class of cases, "knowing violation" means knowledge of an employer's rule or policy against on-duty sleeping, but not knowledge of the precise act of entering sleep. A more general and anticipatory knowledge of the duty to avoid sleeping on the job is the mentality contemplated by the statute.[8]

In this case our individualized assessment of the circumstances requires disqualification. The first, and dominant, circumstance is the importance of the employee's responsibility. Milinazzo's assignment was to monitor the operation of life-sustaining medical equipment. The quintessential duty of that mission was alertness. It brought with it the obligation to preempt or to combat fatigue or drowsiness by such cautionary measures as adequate rest, on-the-job physical and mental exercises, safe stimulants, or calls for coverage or replacement. The gravity and sensitivity of the work imposed a commensurate duty of care,[9] and a knowing awareness of its required wakefulness.[10]

[8] Our case contains no disputes of fact or issue of substantial evidence under G. L. c. 30A, § 14(7)(*e*). Milinazzo has not participated in the appeal. The DUA has rested its position upon two contentions of law: (1) that the mother's condonation of Milinazzo's conduct negated its character as a deliberate and wilful or knowing action contrary to Shriver's interest; and (2) that an inadvertent sleeping lapse cannot constitute a knowing violation of an employer's rule or policy. The parties presented no conflicting evidence or argument about (a) the seriousness of the ventilator monitoring function, (b) the earlier sleeping incident, or (c) any circumstances of personal hardship burdening Milinazzo.

The DUA's contention that the inherently inadvertent character of falling asleep never can constitute a disqualifying knowing violation proves too much. That rationale would qualify for benefits even habitual sleepers and individuals derelict in the performance of duties important to the safety of others.

[9] As Shriver points out in the course of its distinction of this case from the *Wedgewood* circumstances, sleepiness in that instance would cause an interruption in custodial chores while here it would expose a patient to catastrophic danger. Milinazzo's duty here was not unique or extraordinary amid the modern workforce. In numerous workplaces we rely upon the wakefulness or vigilance of employees for critical safety purposes, such as air traffic control, public transportation driving, and particular security functions.

[10] The gravity of the danger of a ventilator failure overrode any assumption of its improbability. However unlikely, a single undetected malfunction might prove devastating to a patient.

Second, Milinazzo had some warning of her susceptibility to drowsiness. The first unreported episode had occurred six months earlier. See *Wedgewood*, 25 Mass. App. Ct. at 30. The patient's mother had observed her asleep. Milinazzo had promised the mother that she would not repeat the infraction.

Third, our case contains no mitigating personal circumstances of the nature presented in the *Wedgewood* case. Milinazzo did not report to the review examiner any personal difficulties or hardship causing her particular fatigue or stress. Shriver retained its burden of proof of ineligibility throughout the administrative process. In the course of its proof, it did not encounter any countervailing evidence of mitigating factors from Milinazzo.[11]

*Conclusion.* In these circumstances, Milinazzo's instances of sleeping on duty constituted knowing violations of a rule or policy of Shriver within the meaning of G. L. c. 151A, § 25(*e*)(2). The mother's condonation of such violations was immaterial. The DUA's contrary conclusions are errors of law within the meaning of G. L. c. 30A, § 14(7)(*c*). We therefore reverse the judgment of the District Court and direct the entry of judgment in favor of Shriver.

*So ordered.*

GREEN, J. (dissenting). I agree with the majority's conclusions that Milinazzo believed that Shriver's client condoned her sleeping on the job, and that falling asleep is not inherently inadvertent (so that doing so never can constitute a knowing violation of an employer's policy). However, because the review examiner applied an incorrect legal standard in evaluating Milinazzo's eligibility for benefits, he did not reach the question whether her violation was wilful misconduct within the framework set

[11]A remand for further fact finding (as proposed by the dissent) is not warranted. First, Milinazzo had the opportunity to present all information supporting excusal, extenuation, and mitigation at the hearing. She offered only the immaterial ground of the parents' condonation. Second, this case presents an inherently narrow range of material facts (notice of employer's important policy, employee's repeated acknowledgment of the policy, seriousness of the infraction, repetition of the infraction) so as to leave the discovery of any additional and overriding material facts by remand particularly implausible.

out in *Wedgewood* v. *Director of the Div. of Employment Security*, 25 Mass. App. Ct. 30, 33 (1987). As observed in *Wedgewood, supra*, "sleeping on the job *may* constitute such misconduct in wilful disregard of an employer's interest as to justify the denial of unemployment compensation benefits. However, each such case must be examined individually in light of any mitigating circumstances." (Emphasis supplied.) The majority undertakes that individualized assessment of the circumstances in the present case, based on the administrative record, concluding that Mili-nazzo's conduct warrants denial of benefits. However, as we observed in *Norfolk County Retirement Sys.* v. *Director of the Dept. of Labor & Workforce Dev.*, 66 Mass. App. Ct. 759, 763-764 (2006):

> "Our review of the board's decision must 'give due weight to the [agency's] experience, technical competence, and specialized knowledge[,] . . . as well as to the discretion-ary authority conferred upon it.' *O'Brien* v. *Director of the Div. of Employment Security*, 393 Mass. 482, 486 (1984), quoting from G. L. c. 30A, § 14(7). We do not act as a fact finder in employment security cases, because it remains 'the agency's responsibility to weigh the evidence, find the facts, and decide the issues.' *Manias* v. *Director of the Div. of Employment Security*, 388 Mass. 201, 205 (1983). See *Guarino* v. *Director of the Div. of Employment Security*, 393 Mass. 89, 92 (1984). Our limited function is to determine whether the board of review applied correct legal principles in reaching its decision, whether the deci-sion contains sufficient findings to demonstrate that the correct legal principles were applied, and whether those findings were supported by substantial evidence within the meaning of G. L. c. 30A, § 14(7)(*e*). See *Guarino* v. *Direc-tor of the Div. of Employment Security, supra* at 92-93; *O'Brien* v. *Director of the Div. of Employment Security*, 393 Mass. at 485."

I respectfully disagree with the majority's suggestion that the present case contains no disputes of fact or issues of substantial evidence. See *ante* at 374 n.8. Though the board is incorrect in its assertion that falling asleep never can constitute a knowing violation, the *Wedgewood* framework explicitly envisions a

particularized assessment of the facts of each case. In my view, settled principles of administrative law require that assessment to be performed by the agency in the first instance, and I accordingly would remand the case to furnish the review examiner and the board the opportunity to do so.[1]

---

[1] Contrary to the suggestion of the majority, see *ante* at 375 n.11, I do not envision any need for introduction of additional evidence following remand. Instead, I believe that the weighing and assessment of the evidence already in the record against the *Wedgewood* standard is the prerogative of the hearing examiner in the first instance, and is not the proper function of an appellate court.