NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-760

ANGELICA E. ALVAREZ

vs.

DIRECTOR OF THE DEPARTMENT OF UNEMPLOYMENT ASSISTANCE & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The applicant, Angelica E. Alvarez, appeals from a judgment of a District Court judge affirming a decision of the Department of Unemployment Assistance Board of Review (board) denying her unemployment benefits. Concluding that substantial evidence supported the board's finding that the applicant intentionally acted contrary to her employer's interests where she interfered with the store manager and then participated in a text message conversation sent to multiple employees that included homophobic slurs and threats of violence against the manager, we affirm.

1. Standard of review. "We review the department's decision pursuant to G. L. c. 30A, § 14 (7)." Fallon Community

_____

[1] Canna Provisions, Inc.

Health Plan, Inc. v. Acting Director of the Dep't of Unemployment Assistance, 493 Mass. 591, 595 (2024). "The agency's decision may only be set aside if the court determines that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law." DiGiulio v. Director of the Dep't of Unemployment Assistance, 94 Mass. App. Ct. 292, 293 (2018), quoting Coverall N. Am., Inc. v. Commissioner of the Div. of Unemployment Assistance, 447 Mass. 852, 857 (2006). "We 'give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.'" Cape Cod Collaborative v. Director of the Dep't of Unemployment Assistance, 91 Mass. App. Ct. 436, 440 (2017), quoting G. L. c. 30A, § 14 (7).

2. Intentional misconduct. Pursuant to G. L. c. 151A, § 25 (e) (2), "an employee is disqualified from unemployment benefits if he or she was discharged because of 'intentional conduct or inaction which the employee knew was contrary to the employer's interest.'" Fallon Community Health Plan, Inc., 493 Mass. at 593, quoting Still v. Commissioner of Employment & Training, 423 Mass. 805, 810 (1996). The employer had the burden of proof at the hearing. See Shriver Nursing Servs.,

2

Inc. v. Commissioner of the Div. of Unemployment Assistance, 82 Mass. App. Ct. 367, 370 (2012).

Here, evidence was presented that the store manager turned up the volume of the music in the store and the applicant "kept turning it down," requiring the manager to turn it up again. This happened "over and over" until the manager sent her home. Although the applicant testified that the manager did not explicitly tell her not to change the volume, the contemporaneous text messages reflect that the manager "TOLD HER NOT TO TOUCH THE MUSIC." The applicant did not actually leave until the manager threatened to call the police.[2]

Around this time, the applicant participated in a group text message conversation in which she complained about the manager. In that text conversation, a coworker used a homophobic slur to refer to the manager and expressed the intention to "punch the fucking lights out [of] his ass." Another called the manager "a bitch."[3] The applicant continued to participate in the conversation and expressed her intention to continue turning down the music. Besides the four participants in the conversation, at least three other employees received the text messages. Upon being told she was being

[2] The board's statement that the manager actually called the police is in error.

[3] Both coworkers were also fired.

3

terminated, the applicant immediately used profanity and stated that she intended to increase her harassment of the manager.

Faced with this evidence, the board reasonably determined that the applicant was intentionally insubordinate, contrary to the employer's interests. Contrary to the applicant's assertion, the board was not required to credit the applicant's testimony that she acted in this way because she "couldn't communicate with customers." See Lincoln Pharmacy of Milford, Inc. v. Commissioner of the Div. of Unemployment Assistance, 74 Mass. App. Ct. 428, 434 (2009) ("We will not disturb the board's decision to discredit [the witness's] explanation"). Indeed, the evidence strongly supported the conclusion that she was intentionally interfering with the management of the store out of dislike for the manager. Similarly, the board had no duty to credit the applicant's testimony about earlier misconduct by the manager, much less to find that it established that her insubordination was in service of her employer's best interests.

Also misplaced is the applicant's suggestion that only a hostile work environment, as defined in the employment discrimination context, could be contrary to the employer's interest. Whether or not the text message conversation rose to the level of employment discrimination, the board could reasonably find that messages to numerous employees using slurs and threatening violence against a store manager intentionally

4

created a hostile work environment contrary to the employer's interests.  Indeed, the applicant agreed that there was a hostile work environment but merely asserted that "[w]e were already in a hostile work environment."  Even if true, the board could find that the applicant's contribution to that environment was intentional conduct contrary to the employer's interest.  The board's decision was lawful and supported by substantial evidence.[4]

Judgment affirmed.

By the Court (Ditkoff,
D'Angelo & Wood, JJ.[5]),

*Paul Little*

Clerk

Entered:   November 13, 2025.

---

[4] For reasons that are hard to fathom, the board's lawyer devotes nearly one-third of his argument section to arguing that the board erred in concluding that there was "insufficient evidence to establish that the discharge was for a knowing violation of the employer's reasonable and uniformly enforced rule or policy."  Putting aside the fact that no such argument was raised in the District Court, the board's conclusion was well supported by the evidence, as the employer struggled to identify any such policy at the hearing.

[5] The panelists are listed in order of seniority.